told Blakeney that he would ask plaintiff to give defendants some of their business. He further testified that he asked plaintiff thereafter to do so. It must be remembered that this conversation represents the inception of a practice of Rait's giving up defendants' name on purchases and sales made by him for Gaylord, doing business under the name of Latham, Alexander & Co., and that he never was directly authorized by the defendants to give up their name, though necessarily giving up the name of another broker involved the consent of that broker; for, by signing the contract, the second broker assumed a risk, and must, therefore, first approve the responsibility of the principal whose business he thereby secured. It was fair to assume, therefore, that, when plaintiff "gave up" the defendants' name, he was acting as a result of the conversation previously held between Blakeney and his principal. Under such circumstances, even if the plaintiff actually controlled the business of Gaylord, and in a sense procured it for the defendants, the defendants had a right to assume that the business was procured by Blakeney, and though they actually may have accepted plaintiff's services, they did so without knowledge that he had procured the business, and under circumstances that justified them in believing that these services were not rendered with the expectation that he would be paid the customary commission, and that therefore rebuts the presumption of any implied promise to pay.

[4] It is true that the evidence shows that in July the plaintiff rendered a bill to defendants, including an item of $96 for commissions for procuring this business during the preceding month, and that the defendants paid this bill. This payment is, however, merely an admission which the defendants had a right to explain, and when the plaintiff's whole evidence shows that the defendants were never obliged to pay him these commissions, and the defendants explain that the bill was paid by mistake, their explanation cannot be lightly disregarded.

It follows that the judgment must be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.

---

(153 App. Div. 186.)

THACHER et al. v. NEW YORK, W. & B. RY.

(Supreme Court, Appellate Division, First Department. November 22, 1912.)

1. FRAUDS, STATUTE OF (§ 138*)—CONTRACTS WITHIN STATUTE—REMEDIES OF PARTIES.

An oral construction contract, performance of which within a year was not contemplated by the parties, being void, the contractors could recover on the quantum meruit only.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 327–333; Dec. Dig. § 138.*]

2. FRAUDS, STATUTE OF (§ 138*)—QUANTUM MERUIT—CONSIDERATION OF TERMS OF CONTRACT.

The terms of a construction contract, void under the statute of fraud, cannot be considered in determining the rights of the parties thereunder,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

except that the amount of compensation provided therein may be considered as some evidence of the value of services thereunder.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 327–333; Dec. Dig. § 138.*]

3. INTEREST (§ 19*)—UNLIQUIDATED DEMAND.

It was error to add interest to the amount of the verdict where the damages were unliquidated.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 35–40; Dec. Dig. § 19.*]

Appeal from Trial Term, New York County.

Action by Edwin Thacher and William Hueser, copartners doing business as the Concrete-Steel Engineering Company, against the New York, Westchester & Boston Railway. From a judgment for plaintiffs at Trial Term (76 Misc. Rep. 60, 136 N. Y. Supp. 342), and an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Graham & L'Amoreaux, of New York City (George S. Graham, of New York City, of counsel), for appellant.

Henry D. Merchant, of New York City (Abel Merchant, Jr., of Nassau, and Alfred D. Olena, of New York City, on the brief), for respondents.

CLARKE, J. The plaintiffs are copartners doing business under the name of Concrete-Steel Engineering Company. This partnership was formed early in 1901, and was for the purpose of carrying on the business of consulting engineers. The defendant corporation is the successor in interest of the New York & Portchester Railway Company and concededly responsible for any liability of said company established in this action.

In 1901 the Portchester Company was endeavoring to obtain from the State Railroad Commission a certificate of reasonableness and necessity in order to permit it to construct its proposed line of railway. Reinforced concrete steel construction was at that time comparatively novel in the East. Plaintiffs had had experience and were experts in such matters. The plaintiffs, at the request of the company, prepared estimates and appeared before the Railroad Commission, and testified in relation to bridges and other structures of steel concrete to be built on the proposed lines. Subsequently they claim they were employed to prepare plans, estimates, and specifications.

The complaint sets up two causes of action, as the court charged the jury:

"The first cause of action is based upon this theory: The plaintiffs claim that they had a contract with the New York & Portchester Railroad Company * * * for the purpose of doing certain engineering work, * * * and that the ultimate price fixed was 2½ per cent. on the cost of construction, or the contract price for which the company might eventually contract for the construction of the railroad. * * * The second claim in the complaint is based upon the same work that is claimed to have been done, but

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it excludes the idea of a specific agreement at the rate of 2½ per cent., and asks that the defendant shall pay the fair and reasonable value of the work performed, upon the theory that the work was accepted by the Portchester Railroad, and even if there was not a definite, specific contract, as alleged in the first cause of action, the plaintiffs claim that they are nevertheless entitled to payment, upon the theory that, when a man does work for another and the latter accepts that work, a contract is implied."

The amount sued for was $50,704.57, with interest thereon from April 7, 1906.

There was direct and positive contradiction in the testimony, so much so that the court charged as follows:

"You have therefore a clean cut question of fact between these parties, which presents really a question of veracity, because one or the other is woefully mistaken; and I would say that it is not a case where you may throw the mantle of charity over the testimony of the parties by saying that perhaps one or the other misunderstood something. I think the differences between them as to the main issue are so clear that one or the other is deliberately falsifying. That, at least, is the way it strikes me; but I will leave all that to you."

The learned trial court submitted five questions in writing to be answered by the jury. Those questions and their answers are as follows:

"(1) Did the New York & Portchester Railroad Company absolutely employ the plaintiffs as consulting engineers and to supply said company with plans, specifications, estimates of cost of arch bridges, subways, and concrete steel construction work suitable and proper to the railway line, route, or routes under consideration by said company, at a price of 2½ per cent. of the contract price or cost of construction of such bridges, subways, and constructions? A. Yes.

"(2) Was it within the contemplation of the parties that the work of constructing the bridges, subways, and concrete steel structures, as well as the making of the plans, specifications, estimates, detail plans, and giving out of contracts for construction, might reasonably have been performed within one year from the date when the alleged agreement of employment was made? A. No.

"(3) Was the work alleged to have been done by the plaintiff in 1906 upon the Harrison Avenue Bridge performed upon the special request of the Portchester Railroad Company; and, if so, was it an independent contract or in part performance of the original contract of employment alleged to have been made in 1901? A. By special request.

"(4) What is the fair and reasonable value of all the services actually performed by the plaintiffs, as established by the evidence? A. $12,400 and interest from February 29, 1908.

"(5) Were the alleged services of the plaintiffs rendered upon the request of the New York & Portchester Railroad Company and for its benefit? A. Yes."

To this verdict $2,998.73 interest was added, and a verdict for the plaintiff directed for $15,398.73.

[1] The contract not having been in writing, and being one not within the contemplation of the parties to be performed within one year, as found by the jury, the action is to be treated as one upon quantum meruit. The great bulk of the services alleged were performed, and the plans, specifications, and estimates furnished in January, 1903. A particular service, to wit, the making of the plans, specifications, and estimates for what is known as the Harrison Ave-

nue Bridge, found by the jury to have been performed by special request, is conceded to have been done in 1906. The action was commenced by the service of the summons and complaint on March 16, 1910. Both the statute of frauds and the six-year statute of limitations are pleaded as defenses in the answer.

The appellant claims that, as the jury found that the work done in 1906 was by special request, it follows that for all the work done up to 1903 the statute of limitations has run, and there can be no recovery, and that, as the jury brought in a verdict for a lump sum, there is no way of determining what was allowed for the work done by special request in 1906, and therefore that no judgment can be predicated upon the verdict. It also claims that the action being for unliquidated damages for services rendered under the quantum meruit, where the amount sued for was upwards of $50,000 and the amount found $12,400, the addition of interest to the sum so found was error.

The respondents attempt to avoid the statute of limitations by claiming that under their contract a continuous employment was contemplated; that they were to furnish additional working and detailed plans from time to time, as called for, and that they were to be paid when the construction contract was let; that they were always ready, able, and willing to perform; and that their cause of action did not accrue under that contract until it was repudiated or the railroad company had abandoned its work or put it out of its power to perform.

[2] The difficulty about this claim is that this is not an action on the contract because the contract was void under the statute of frauds which has been invoked by the defendant; and, as no recovery can be had or has been had upon the alleged contract, the terms thereof cannot be considered in construing the plaintiffs' rights. It has recovered, and can only recover, for services rendered, and the cause of action for these services accrued when they were rendered, which was more than six years prior to the commencement of the action.

It seems to us that the proposition advanced by the appellant is sound. The whole theory of allowing a recovery upon quantum meruit where the contract is found to be void under the statute proceeds upon an elimination of the contract. There is no contract in existence to be availed of by either the plaintiff or the defendant to fix their several rights, duties, or obligations. The action is based upon the equitable doctrine that the defendant having received the benefit should pay therefor what it was reasonably worth; that the implied promise to pay became enforceable when the services were rendered, and hence that the cause of action then accrued. It is true the later cases hold that the amount of remuneration provided by the alleged contract may be looked at as some evidence of the value of the services, but the jury are not bound thereby. It is admitted in evidence as in the nature of an admission as to value. If, although the statute declared the contract to be void and incapable of enforcement, it could still be made use of to fix the respective liabilities of the parties, the statute would become a nullity. The very basis of

the action upon the quantum meruit is the nonexistence of any express contract. In the case at bar the claim that it was a continuing contract is destroyed by the verdict that the work done in 1906 was by special request.

2. There is no way of saving this judgment upon the finding that services were rendered in 1906 by special request because there is no evidence in the case, and, of course, no finding of the jury as to the specific value of those services.

[3] 3. In any event, it was error to add interest to the amount of the verdict because the amount of the damages was unliquidated, and there was no certain method of ascertaining the amount thereof prior to the verdict.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.