Argued September 22, decided September 30, 1913.

## SMITH *v.* I. GEVURTZ & SONS.

### (135 Pac. 190.)

**Evidence—Opinion Evidence—Value of Services.**

1. In an action for commissions on the sale of a hotel, plaintiff, who testified that he was in the real estate and timber business, that he had sold properties, although not any rooming-house property, and that he understood from real estate men that the usual commission for such sales was 5 per cent, was properly permitted to testify as to what his services were worth in his opinion.

**Appeal and Error—Review—Questions of Fact.**

2. On appeal in an action tried by the court without a jury, the findings stand as a verdict and cannot be set aside unless the Supreme Court can say affirmatively that there was no evidence to support them.

**Brokers—Action for Commissions—Sufficiency of Evidence.**

3. In an action for commissions on the sale of a hotel, evidence *held* sufficient to support a finding that the services were performed for defendant, although it was claimed that the lease of the hotel and the furniture were owned by the son of defendant's manager.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is an action by Andrew Smith against I. Gevurtz & Sons, a corporation, to recover commissions for selling a hotel. The plaintiff recovered a judgment for $700 in the court below, and defendant appeals.                                                    AFFIRMED.

For appellant there was a brief over the names of *Beach, Simon & Nelson,* with an oral argument by *Mr. Roscoe C. Nelson.*

For respondent there was a brief over the names of *Mr. W. O. Henderson* and *Davis & Farrell,* with an oral argument by *Mr. Henderson.*

Mr. Justice Ramsey delivered the opinion of the court.

The plaintiff is a dealer in real estate, rentals and the general transferring, leasing, and selling of property. The defendant is a corporation in the City of Portland and engaged in the business of furnishing and equipping for occupancy hotels and lodging-houses, and in buying and selling leases and furniture of hotels and lodging-houses.

The plaintiff claims that, at the request of the defendant, about February 18, 1912, he found a purchaser named E. G. Kinne for a hotel for the defendant, and that said purchaser bought said hotel for the agreed price of $14,000, and he alleges that his services for finding a purchaser for the hotel are reasonably worth $700.

This action was tried by the court below, without a jury, and the court filed its findings of fact and conclusions of law and found that the plaintiff was entitled to a judgment for $700, and judgment for that amount was rendered in favor of the plaintiff. The defendant appeals and claims that there was *no* evidence to support the court's findings of fact, etc.

1. Counsel for the defendant claims that there was no competent evidence tending to prove that the plaintiff's services in selling the hotel were of any value. The plaintiff testified that he was in the real estate and timber business in Portland since 1909, and that he was in the said business in Portland from 1902 until 1906, and he testified that in his opinion his services were worth $700. His evidence on this question appears not to have been objected to. On cross-examination he testified that he had sold other properties but not any rooming-house property. He testified that he understood, from real estate men that the usual commission for such sales is 5 per cent.

In 1 Wigmore on Evidence, Section 715, the author says: "It would be a hard rule which would prevent a plaintiff from informing the jury of his own estimate of his services; and the courts seem inclined to impose no terms as to his general familiarity with the class of services; that he has rendered them justifies listening to his opinion."

Section 685 of 1 Elliott, Evidence, says: "Witnesses who are not strictly experts, as well as expert witnesses, may testify as to the value of services in a proper case. They must, however, have some knowledge on which to base their opinion. If they have such knowledge, the fact that it is slight will go to the weight of their testimony rather than to its competency," etc.

Volume 13 of Encyclopedia of Evidence, pages 593, 594, says: "Qualifying knowledge must extend to the usual compensation paid at about the time and place in question. Slight knowledge of the value of services qualifies a witness to testify. * * The extent of a witness' knowledge goes rather to the value than to the competency of his evidence."

In order to be qualified to give an opinion as to the value of services, a witness must have some knowledge of the kind of services in question and as to their value; but, when he has knowledge of these matters, his testimony is competent, and the extent of his knowledge goes only to the weight of his evidence. The evidence of the plaintiff as to the value of his services was competent and sufficient to support the court's findings on that point.

The main point for consideration is whether there was *any* evidence tending to prove that the services rendered by the plaintiff were performed *for the defendant.*

2. This action having been tried by the court, without a jury, the court's findings stand as the verdict of

a jury and can be set aside in the same manner and for the causes only for which the verdict of a jury may be set aside. We cannot set aside the findings of the court in this case unless we can say affirmatively that there was no evidence to support them. This presents the principal question for decision.

Was there *any* evidence to support the findings? The defendant claims that it had nothing whatever to do with the employment of the plaintiff, and that he did nothing for it, and that it did not own the hotel or furniture or lease sold. There is evidence tending to prove that the plaintiff found the purchaser for the property, and that this purchaser bought the property, and that the plaintiff deserved to have for his services $700. But it is strongly asserted by the defendant that the services were not performed for *it* but for Phil. Gevurtz.

3. The defendant is a corporation and its name is I. Gevurtz & Sons. Phil. Gevurtz is a son of I. Gevurtz, but the defendant asserts that he is neither an officer nor an agent of the defendant corporation.

The plaintiff testified that he had met Mr. Gevurtz, of Gevurtz & Sons; that Mr. Kinne (the purchaser) came to the plaintiff's office and told him that he was looking for a rooming-house or hotel, and that the plaintiff advised him that Gevurtz & Sons had a great many rooming-houses and had them for sale; that he called up Gevurtz & Sons next morning and Phil. Gevurtz came to the phone; he asked him if he had any hotels for sale; he said he had two and one was complete and the other was not; he asked plaintiff to bring his friend over; that Mr. Kinne agreed to go over and see Gevurtz; that Mr. Kinne had gone over and had seen the hotel; plaintiff told Gevurtz that Kinne was the person with whom he had talked, and that plaintiff would call at the store and talk the matter

over; the party that answered the phone got Phil. Gevurtz on the phone, and plaintiff talked with him; that he met Mr. Gevurtz with Mr. Kinne once; Mr. Kinne and he went to Mr. Gevurtz; that Phil. Gevurtz was the only one connected with I. Gevurtz & Sons with whom he talked about the sale; that his conversations were with Phil. Gevurtz; that he supposed it was Gevurtz & Sons and that Phil. Gevurtz was one of the firm; that he called up I. Gevurtz & Sons and they referred him to Phil. Gevurtz as the party that was *handling* this property.

Mr. Kinne testified that the plaintiff told him that Gevurtz & Sons had a hotel for sale; he got a description of the property; he discovered the sign Gevurtz & Sons and went in the store and saw Mr. Levy, manager or salesman in the store (of Gevurtz & Sons); Mr. Gevurtz, in the store, said that he could not pay a commission to Mr. Smith for selling the Clifford Hotel; then they had Kinne to go over and see the other hotel. Kinne met Mr. Gevurtz and Mr. Levy and he agreed to take the hotel. Mr. Kinne's conversations about the property were with Mr. Levy, a salesman in the store of I. Gevurtz & Sons, and with Phil. Gevurtz. Mr. Kinne purchased the hotel for $14,000 and paid for it partly in cash by check, partly by conveying a lot in Boise, Idaho, and he gave a note and chattel mortgage for the residue. We call particular attention to the manner of payment as it shows the defendant's connection with the transaction. Mr. Kinne paid the $800 by check, and this check was made payable to *I. Gevurtz & Sons,* the defendant. The deed to the lot in Boise, Idaho, was made to *I. Gevurtz & Sons,* and the note and chattel mortgage were also made *to the defendant.* Phil. Gevurtz attended to the business, but the check, the deed, and the note and mortgage were made to the defendant. When the plaintiff called the

defendant at its store by telephone, Phil. Gevurtz answered, and Kinne found him in the defendant's store and there talked with him and Mr. Levy, a salesman in the store, concerning buying the hotel.   Both the plaintiff and Kinne understood that Phil. Gevurtz was acting for the defendant.   The lease for the hotel was in the name of Phil. Gevurtz, and he assigned it to Kinne, but all the consideration for the property purchased was paid to the defendant.

Phil. Gevurtz testifies that the defendant had nothing to do with the transaction and that he was the person for whom the sale was made.   He admits that the store (defendant's store) collects the rents for the hotels and helps him to sell the hotels.   He says that *he* is trying to sell the Boise City lot that was deeded to the defendant for $500.   Why is *he* trying to sell it?   It was deeded to the defendant, and the fact that Phil. Gevurtz is trying to sell it is a circumstance from which the court might legitimately infer that he was, all the time, acting for the defendant.   Before the sale he was active in selling the hotel and in having all the consideration paid to the defendant, and after the sale he admits that he is trying to sell the Boise property, which was deeded to the defendant, at a great discount.

After the sale the plaintiff's counsel, W. M. Davis, wrote to Phil. Gevurtz a letter concerning his claim for services for making the sale.   The plaintiff and his attorney understood that Phil. Gevurtz was an officer or manager of the defendant and wrote to him, in care of the defendant.   In this letter Mr. Davis referred to the plaintiff's claim against *Gevurtz & Sons* for commission for the sale of this hotel and said that Mr. Smith informed him that Phil. Gevurtz had promised to pay this commission.   It was distinctly stated in this letter that the claim *was due from Gevurtz & Sons.* Phil. Gevurtz answered this letter on a printed letter-

head of I. Gevurtz & Sons, and in this letter he uses the personal pronoun "we," from which the court could properly conclude that he was speaking for the defendant and not for himself only, and in this letter he does not say or intimate that the claim for commission was not due from "Gevurtz & Sons," as stated by Mr. Davis, but did say, "Now *we* are willing to pay the 5 and 2½ per cent to either of you" (meaning Mr. Smith or Mrs. Lents). This letter contained no intimation that Gevurtz & Sons did not owe the bill for commission, but it did say that "we" were willing to pay a commission to Smith or Lents but not to both.

It seems that the only witness for the defendant was Phil. Gevurtz. He claimed not to be either an officer or manager of the defendant but said that his father was the defendant's manager. It is a little strange that his father, or some other officer of the defendant, who had full knowledge of the facts, was not called as a witness. No reason is given for the omission. The defendant relies on the evidence of Phil. Gevurtz.

We believe that the findings of the court below are supported by the evidence of the plaintiff and E. J. Kinne and inferences that could be legitimately drawn from the following circumstances: (1) The fact that the cash payment of $800 was made by a check made payable to the defendant. (2) The fact that the deed for the Boise town lot was made to the defendant. (3) The fact that the note and chattel mortgage for the balance of the purchase price were made to the defendant. (4) The fact that Phil. Gevurtz admits that he is trying to sell the Boise lot which belongs to the defendant, showing that he is acting for the defendant as to this property. (5) The fact that, when Mr. Davis wrote to Phil. Gevurtz concerning his bill against I. Gevurtz & Sons for selling this hotel, Phil. answered, saying "we" are willing to pay a commission to Smith or Lents, and not intimating that the defendant did

not owe the bill.   (6) The fact that when the plaintiff telephoned I. Gevurtz & Sons concerning selling the hotel, Phil. Gevurtz answered the phone, and when Kinne called on I. Gevurtz & Sons concerning buying this hotel, he found Phil. Gevurtz there at the store to attend to the business, etc.

Phil. Gevurtz, in order to show a reason for having the whole of the consideration paid to the defendant, stated that he bought furniture of the stores to furnish hotels and turned over mortgages, etc., to pay therefor, and on page 44 of the abstract he says, concerning the hotel sold to Kinne: ''On this very hotel I had to pay the store money, because it didn't turn out satisfactorily. I am not getting the actual value of the furniture, and I have got to pay the store back money. So it is my deal and not the store's.'' He had just said, ''The way I do with Clifford and every one of them, I take the leases. I furnish them up. If there is anything made on them, the leases are all in my name. When a mortgage is given, or anything, I turn that over to the store as a part payment (for furniture), and the rest of it I pay the store myself.'' But on page 46 of the abstract he admits that he did not purchase from the defendant the furniture with which he furnished the hotel sold to Kinne, but that he bought it of Gevurtz Bros., a different corporation. But the $14,000 paid by Kinne for this hotel was all paid to the defendant.

We cannot say that there was no evidence to support the findings of the court below. We do not decide on which side the evidence preponderated. That question was for the trial court. Our decision is that there was evidence to support the findings.

The judgment of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.