[Civ. No. 5467. First Appellate District, Division One.—March 24, 1927.]

## CHARLES A. BLANK, Respondent, v. ELIZABETH A. RODGERS, Appellant.

[1] CONTRACTS—ORAL CONTRACT TO MAKE LEASE—REPUDIATION OF BY OWNER—MAKING OF IMPROVEMENTS AND PERFORMANCE OF SERVICES BY TENANT — RECOVERY OF REASONABLE VALUE — PLEADING—STATUTE OF FRAUDS.—In an action to recover the reasonable value of moneys expended, services rendered and materials furnished by plaintiff in connection with certain lands owned by defendant, instituted after defendant failed to keep her promise to execute a ten-year lease of the property to plaintiff made under an oral agreement whereby plaintiff was to go upon the lands, make certain improvements and do certain things, it was proper to set forth the terms of the oral agreement in order to show the circumstances under which plaintiff went into possession of the premises and expended the money for which he sought reimbursement, even though no action at law would lie on the contract itself, it being within the statute of frauds and void.

[2] ID.—UNJUST ENRICHMENT—PLEADING.—In such action, where the complaint alleged that it was part of the oral agreement that the plaintiff should do the very things for which he sought compensation, there was thus a showing of unjust enrichment of the defendant at the expense of the plaintiff from which followed the

legal conclusion that plaintiff was entitled to relief to the extent of the reasonable value of his improvements.

[3] ID.—AGENCY—RATIFICATION—EVIDENCE.—In such action, if there be any question as to the sufficiency of the conduct and declarations of defendant to establish an agency between herself and another purporting to represent her in the transactions with plaintiff, such conduct and declarations establish a ratification by defendant of the agreement entered into with plaintiff by said third party assuming to act as agent of defendant.            .

[4] ID.—CREATION OF AGENCY—RATIFICATION—DECLARATIONS OF AGENT. The creation of an agency, like the extent of an agent's authority and the ratification of an unauthorized act, may be proven by circumstantial evidence; but an agency cannot be proved by the declarations of the alleged agent.

[5] ID.—DATE OF REPUDIATION OF ORAL AGREEMENT—EVIDENCE.—In such action, defendant's claim that recovery cannot be had for anything furnished or expended by plaintiff after a certain date, because on that date the alleged agreement was fully repudiated, cannot be sustained where there was a conflict in the evidence on such question.            .

[6] ID.—INVALIDITY OF ORAL CONTRACT—RIGHT TO RECOVER REASONABLE VALUE OF SERVICES, ETC. — STATUTE OF FRAUDS. — In such action, the oral contract being void and incapable of enforcement in a court of law, yet plaintiff having furnished moneys, materials, and services in pursuance thereof, he may recover the reasonable value of the moneys and materials furnished and the services performed, this being the rule where the contract is void for any cause not illegal.

---

(1) 2 C. J., p. 951, n. 60, p. 952, n. 61; 40 Cyc., p. 2840, n. 20. (2) 27 C. J., p. 364, n. 65.    (3) 2 C. J., p. 954, n. 81.    (4) 2 C. J., p. 935, n. 27, p. 944, n. 96, p. 948, n. 25.    (5) 4 C. J., p. 883, n. 33. (6) 27 C. J., p. 358, n. 22; 40 Cyc., p. 2825, n. 14.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. P. Henshall for Appellant.

Norman A. Eisner for Respondent.

---

4.  See 1 *Cal. Jur.* 696, 697; 21 R. C. L. 820.

CAMPBELL, J., *pro tem.*—Defendant, cross-complainant, and appellant has appealed from a judgment entered against her in the sum of $3,083.74, assigning four reasons why the judgment should be reversed by this court: 1. That the complaint does not state a cause of action and the findings do not support the judgment for the reason that the complaint and findings both proceed upon the theory of the breach of a special contract, or the failure of consideration for that contract, and as the contract alleged was void there could have been no breach of it or consideration for it; 2. That there is no evidence in the record of the existence of the agreement because the evidence consists of declarations of an agent who thereby sought, first, to establish his agency, secondly, to prove the agreement, and thirdly, whose testimony is itself contrary to the very material parts of the agreement found; 3. That the cases relied upon do not support the judgment here; 4. That in any event a recovery here must be limited to whatever was done before September 10, 1921, because on that date the alleged agreement was fully repudiated, and it is the law that a party has a right to repudiate an agreement void under the statute of frauds.

The facts as testified to by respondent are substantially these: The appellant was the owner of certain real property known as the Rodgers Ranch, or Camp Taylor, situated in the county of Marin, consisting of 2,328 acres, which for a long time had been unimproved land. The public had been accustomed for many years to freely picnic and camp upon this property. It had been entirely unproductive of revenue. In the early part of July, 1921, Frank J. Jones, the son-in-law of appellant, sent for respondent to come to his office and when he arrived said to him that he had a very fine business proposition for him, something that was exactly suited to his abilities and that he had practically picked him out of a number of others making application for a lease on the Camp Taylor property. He informed him that he was the manager of Mrs. Elizabeth A. Rodgers' property and that she was the owner of the Camp Taylor property; that he, being the manager of this property, had decided to run this Camp Taylor proposition along business lines and that respondent was the man to do it—that he could rely upon

him; that respondent would use his judgment and that his
integrity was above reproach. Jones wanted respondent to
go there and make use of the property and camp site; to
lay out camp sites and let them out to applicants and to
make improvements on the land; that it would be necessary
for him to build tent platforms and to put up tents and
certain other buildings. There was even mentioned that
a hotel would be the proper thing to erect to properly serve
people who desired to come there; that he should work out
a scheme of charges and charge the people so much. Of
course, to do so Jones informed respondent he would have
to offer them inducements, which he left to respondent's
judgment. Jones informed respondent that this property
had been running wild and that people had camped there
and had damaged the property and that Mrs. Rodgers had
gotten nothing out of it, not even the taxes; that Mrs.
Rodgers "is willing to-day," if respondent would go on
there and patrol this property properly and police it and
keep out the hoodlum element and put it on business lines
to give him a ten-year lease on the property—the exact
terms of this ten-year lease to be determined on the basis
of what could be done.

Mr. Jones said to respondent: "Of course, the camp for
this season is now pretty nearly at the close"—it was near the
end of July—"but you can get some idea as to what we may
do in the future. You are going to put this on a business
basis, but you will have to be there yourself. You can do
whatever you please along business lines and you will keep
exact account of your receipts and expenditures and on that
basis we will then be able to determine the value of the lease
to Mrs. Rodgers. We may put this thing on a flat rental
or we may put it on a progressive rental or we may put it
on a profit-sharing basis, but we cannot tell right yet."

Respondent thought the proposition over for several days
and on July 16th Jones took him over to see the property,
and after several conversations with Jones, on July 20th re-
spondent told Jones in the latter's office that he accepted the
proposition, whereupon Jones dictated, had transcribed,
signed, and delivered to respondent the following memoran-
dum upon the letter-head of appellant:

"Office of Elizabeth A. Rodgers, 429 Davis St.,
  "San Francisco, Cal., July 20, 1921.
  "This is to certify that I have this day leased to C. A. Blank, San Rafael 3228 acres of Rodgers Ranch, commonly known as Camp Taylor property for purposes of camping, fishing, hunting and picnicing. Mr. Blank is authorized to sublet the above mentioned rights in any manner he sees fit and collect money therefor.

  "ELIZABETH A. RODGERS.
  "Per F. JONES Manager."

At the same time Jones told respondent that the lease would provide that in the event the property was sold respondent would be reimbursed for the improvements he would make upon the property and be recompensed for the time put in and for the value of the unexpired lease.

Jones took respondent to the property the next day and had him deputized as a deputy sheriff in San Rafael. Respondent prepared for properly policing these grounds. He hired one deputy besides himself and an assistant and went to work with them. They patrolled the grounds and expelled all people who were there without authority and who would not pay the fee set by respondent and were not willing to submit to the rules and regulations, and cleaned up the property, which work extended over many weeks; put up toilets for the accommodation of the campers, also a water system. They filled the reservoir about 2,000 feet from Camp Taylor and ran the water into Camp Taylor; paid for the water-pipe; built crossings, a foot-bridge, lawns, and put up a living place for respondent—a kind of a bungalow with an open approach in front and two rooms behind and a kitchen, the front being used for store purposes. Respondent purchased a horse to be used in patrolling the property; put up platforms, tents, and camp stoves, built a stable and did other things, such as putting out fires, making improvements on the creek, cleaned up and deepened holes, built crossings and picked out debris.

Respondent advertised the camping and picnicking facilities in the newspapers and got out rate cards and permits. He fixed the rates to be charged campers and hikers. He had receipt books printed so that each camper received the original and the carbon remained in the book as a voucher,

and put up large signs on the property inviting people to come and camp and fish and see the manager.

From the time respondent went upon the property he reported to Jones continuously what he was doing. Jones also came to the property in company with appellant, Mrs. Rodgers, and alone. Respondent first met Mrs. Rodgers personally in September, 1921. She came to Camp Taylor accompanied by her daughter, Mrs. Jones, Mr. Jones, and her chauffeur. Jones introduced respondent to Mrs. Rodgers. Respondent had temporary living quarters and an outdoor store on the property. There were signs everywhere. Respondent testified to the following conversation with Mrs. Rodgers: "One of the specific conversations was that Mrs. Rodgers asked me for copies of my literature. She asked me if I wouldn't allow her to have some copies of my permits and my rate cards and then I handed her such copies."

Mrs. Rodgers came again to the property on an afternoon in September, 1921, in company with her daughter, Mrs. Jones. She asked respondent to go over the property with her. There were many campers at the time and signs were posted up over the property notifying campers that they would have no right on the property except upon issuance of a permit by the manager, C. A. Blank, and that they would have to comply with the regulations. Mrs. Rodgers on this occasion suggested certain changes by way of improvement to the bridges, and when they came to where formerly stood the old home place she informed respondent that she did not want campers on that particular part. Mrs. Rodgers asked respondent to accompany her to the "Devil's Gulch Ranch," a tract she had rented out for grazing purposes and separated from Camp Taylor by a fence. Some campers were camping on this property and she requested respondent to remove the campers, fearing trouble with her tenant if any money were collected from campers permitted to camp on his ground.

Respondent kept account of receipts and disbursements and his book of account, together with vouchers, was received in evidence. During September, October, and November respondent brought his book of account to San Francisco and submitted it to Mr. Jones. During these same months respondent and Jones conversed regarding the final lease. The substance of these conversations was that Mrs. Rodgers was

not yet prepared to determine on the proper terms and that was causing the delay. Toward the end of October respondent and Jones went together to see Mrs. Rodgers at the Palace Hotel. Mrs. Rodgers had visitors at the time, and a brief conversation took place in an anteroom. Mrs. Rodgers at that time asked: "Did you bring Mr. Blank in connection with the Camp Taylor and the proposition of the lease and his account?" Mrs. Rodgers at that time said she was not prepared to enter into the arrangement, that she had not decided on the terms, and the interview was rather short and the matters were postponed for some future time. At the same time respondent told Mrs. Rodgers that a man representing himself as Mr. Johnston, warden of San Quentin penitentiary, refused to pay and she told him that Johnston had no right to refuse to pay, and that she was going to instruct her lawyers to write him a letter informing him that all who were on the property must submit to Blank's authority and to the rules and regulations and pay the fee.

About a month later respondent and Jones went to see Mrs. Rodgers again. On this occasion the accounts were submitted. Respondent testified that Mrs. Rodgers asked him: "How much money did you take in?" and respondent stated the amount. "How much did you spend?" and the expenditures were considerably in excess of the moneys taken in, and Mrs. Rodgers remarked: "Well, you are a nice business man—you spend more money than you have taken in."

On January 10, 1922, respondent and Jones again visited Mrs. Rodgers, and on this occasion respondent made a final demand for the lease, and Mrs. Rodgers positively refused to give it to him, and on February 24, 1922, she served written notice on respondent to quit, vacate, and deliver possession and notified him if he did not do so action would be taken to eject him, whereupon respondent surrendered possession. During his occupancy the reasonable value of moneys expended, services rendered, and materials furnished by respondent, according to the record and found by the court, amounts to $3,659.04, and he collected from campers and picnickers $575.50.

While the witness Jones testified that respondent was employed at $75 per month as a caretaker, and in this respect there is a conflict in the evidence the foregoing facts were testified to by respondent and are sufficient to support the

finding of the court that defendant on or about July 20, 1921, entered into an oral agreement whereby plaintiff was to go upon the land of the defendant, patrol and police it, keep out the hoodlum element, prevent the property from being damaged, lay out camp sites, make various improvements and rent out the camping and picnicking privileges for such amount as he should find to be reasonable. For performing the services and doing the things requested and agreed upon, defendant promised a ten-year lease; that the plaintiff performed the acts requested and agreed upon; that the sum of $3,659.04 was and is the actual and reasonable value of the materials furnished, moneys expended, services rendered, and labor performed by plaintiff upon said premises, pursuant to said agreement. That all of the work done, improvements made, and money expended were beneficial to the said property; that the defendant, after the rendition of the services aforesaid, without cause, refused to carry out the terms of the agreement, demanded that the plaintiff quit, vacate, and deliver up possession, and that the plaintiff did vacate and surrender possession in compliance with said demand. That plaintiff collected while in possession $575.50 from campers and picnickers, and has neither been paid nor reimbursed in any further amount. That whatever was done upon said premises was done by plaintiff pursuant to said agreement. That the consideration for which plaintiff made such expenditures and rendered said services has failed in its entirety, except as to said sum of $575.50.

[1] As to appellant's contention that the complaint does not state a cause of action and the findings do not support the judgment there is no merit. The action is not one for damages for breach of contract; and while no action at law would lie on the contract itself, it being within the statute of frauds and void, yet it is proper to set forth the terms of the oral agreement in order to show the circumstances under which respondent went into possession of the premises and expended the money for which he sought reimbursement. [2] Where one, entering upon land under an oral agreement subsequently repudiated, voluntarily makes improvements which he was under no promise to make, it is commonly held that he must plead and prove that the improvements enhanced the value of the land to the extent of the recovery sought, but the complaint here avers that it was

part of the oral agreement that the plaintiff should do the very things for which he seeks compensation. From the declarations of the complaint there is thus a showing of an unjust enrichment of the defendant at the expense of the plaintiff from which follows the legal conclusion that plaintiff is entitled to relief to the extent of the reasonable value of his improvements (*White* v. *Weiland,* 109 Mass. 291; *Parker* v. *Tainter,* 123 Mass. 185; *People's Nat. Bank* v. *Magruder,* 77 Fla. 235 [81 South. 443]; *Ingram* v. *Corbit,* 177 N. C. 318 [99 S. E. 20]; 1 Tiffany on Landlord and Tenant, 390).

If the agreement, instead of calling for improvements, had required respondent to plant and cultivate land and if before the crop matured he was ejected, he would certainly be entitled to compensation for his labor and expenditures (*Crane* v. *Franklin,* 17 Ariz. 476 [154 Pac. 1036]; *Williams* v. *Bevis,* 108 Mass. 91), and there is no essential difference between such a condition of affairs and the condition of affairs pleaded and found in the instant case.

[3] Appellant is in error in the second point urged that there is no evidence in the record of the existence of the agreement because the evidence consists merely of the declarations of the agent himself as to his agency and as proof of the agreement, etc. [4] It is true that aside from the testimony of the witness Jones as to his agency there is no direct evidence of his authority to act as the agent of appellant, but the principle is well established that the creation of an agency, like the extent of an agent's authority and the ratification of an unauthorized act, may be proven by circumstantial evidence (1 Cal. Jur. 696). There is no question or dispute upon the proposition that agency cannot be proved by the declarations of the alleged agent. Upon this question we quite agree with counsel for appellant and the authorities cited by him, but it would seem that the conduct and declarations of appellant are sufficient to establish the agency alleged, but if there be any question on this point they certainly established a ratification by appellant of the agreement entered into by Jones assuming to act as her agent with respondent. Jones was entrusted with her stationery upon which the memorandum of agreement was written. On her first visit to Camp Taylor after respondent assumed charge, when she was first introduced to respondent, she

asked for copies of his permits and rate cards; she saw signs posted up all over the premises; she asked him to remove the campers from adjoining land under lease to a Mr. Dixon for cattle grazing, fearing trouble if respondent collected the rates as shown by his rate cards for camping privileges; she asked him not to permit campers where formerly stood the old home place; she saw the improvements he had placed on the premises, which certainly a caretaker receiving $75 a month would not have erected; she was insistent that the warden of San Quentin prison should submit to respondent's authority, and his rules and regulations and pay the fees he had established. When respondent and Jones called upon her the first time at the Palace Hotel she asked Jones if he had brought Mr. Blank in connection with the Camp Taylor property and the proposition of the lease, and on respondent's second visit she told him he was a nice business man, that he had spent more money than he had taken in. These circumstances amply justified the trial court in finding a ratification of the unauthorized acts of Jones as agent, if in fact they were unauthorized.

[5] As to the claim that recovery cannot be had for anything furnished or expended after September 10, 1921, because on that date the alleged agreement was fully repudiated, it is sufficient to say that there is a conflict in the evidence on this question, respondent positively denying that he received notice to leave the property on September 9, 1921, and Jones admitted that he expected appellant to give respondent the lease until the occurrence at the Palace Hotel along toward the end of the year. That respondent was notified to leave the property on September 9, 1921, is inconsistent with the facts and circumstances, and is found by the court not to be true.

Appellant has cited numerous authorities to the effect that the lease or agreement to lease is void as being within the inhibition of the statute of frauds in that by its terms it was for a longer period than one year and was not reduced to writing, and to the point that in order to bind a principal to an agreement affecting real property, which is required to be in writing, the authority of the agent must also be in writing, and, further, that the lease or agreement for the lease is void for uncertainty. We are in perfect accord with the authorities cited, but this is not an action to enforce specific

performance of the lease or agreement nor for damages for a breach of contract, but is based upon a contract which the law implies, where services are rendered and moneys and materials furnished at the request of another in consideration of a void promise. The promise made is a nullity, but the respondent is in no worse situation than if no promise whatever were made. [6] The contract being void and incapable of enforcement in a court of law, yet respondent having furnished moneys, materials, and services in pursuance thereof, he may recover the reasonable value of the moneys and materials furnished and the services performed. This is the universal rule in cases where the contract is void for any cause not illegal (*Smith* v. *Administrators of Smith,* 28 N. J. L. 208 [78 Am. Dec. 49, 51]). In *Graham* v. *Graham,* 134 App. Div. 777 [119 N. Y. Supp. 1013], in a case where the contract was void by reason of the statute of frauds, the court says in part: "The complaint in this case alleges a parol agreement to convey land unenforceable by the statute of frauds, a repudiation of that oral contract by the promisor, the payment of money and the performance of labor and services upon the faith of said contract by the plaintiff, and seeks to recover therefor. These allegations would seem to contain all the allegations necessary to a cause of action upon the contract which the law implies, where services are rendered under a contract void by the statute of frauds which the promisor refuses to fulfill."

"If money has been paid or services rendered in the performance of a void contract by one party thereto, and the other party fails to voluntarily perform on his part, the injured party has no remedy at law upon the contract; he may, however, under such circumstances, disaffirm such contract and maintain his action at law to recover back moneys so paid or the value of services so rendered." (*Fuller* v. *Reed,* 38 Cal. 110; *Hill* v. *Den,* 121 Cal. 45 [53 Pac. 642].) In the case of a contract for services rendered at a reduced price in consideration of future employment, the future employment being too uncertain to be specifically enforced and therefore void, the plaintiff may disregard the promise for future employment and bring an action to recover the reasonable value for services actually rendered (*Davidson* v. *Laughlin,* 138 Cal. 320 [5 L. R. A. (N. S.) 579, 71 Pac. 345]).

It would make no difference if the contract were void for uncertainty or void because within the statute of frauds. It would be a nullity in either case, and in either case the law implies a contract to pay the reasonable value for materials furnished and services performed, where, as in this case, the promisor refuses to fulfill the contract. Of course, if the agreement were immoral or against public policy, a different situation would be presented, as the court under such circumstances would leave the parties as it found them.

We find no error in the record. The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 23, 1927.