Argued January 13; affirmed February 9, 1932.

McGILCHRIST *v.* F. W. WOOLWORTH CO.

(7 P. (2d) 982)

*Herbert L. Sweet,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*W. C. Winslow,* of Salem, for respondent.

BELT, J. This is an action to recover the reasonable value of labor and services performed by plaintiff at the special instance and request of the defendant corporation which is engaged in the operation of five, ten, and fifteen cent chain stores. It is alleged that between December 2, 1925, and May 31, 1928, the plaintiff rendered services of the reasonable value of $186.66 per month, or aggregating $5,599.80, and that no part thereof has been paid save and except the sum of $2,700, leaving a balance of $2,899.80 due.

Defendant answers in substance that plaintiff was employed under an agreed salary ranging from $18 to $25 per week; that plaintiff has been paid in full; and that he accepted such payment in full satisfaction for the services rendered.

Plaintiff replied alleging that he worked for defendant at $18 to $25 per week during a three-year period of apprenticeship and that it was the understanding and agreement that, at the expiration of such period, he was to be appointed to a managership of a store, with a minimum salary of $2,500 per year and a percentage of the profits earned in the business, provided he developed and qualified for such position. It was further alleged that "at the time of making said agreement, it was understood and agreed between plaintiff and defendant that the salary and wages to be received by plaintiff during said period of time before plaintiff became manager of one of defendant's stores was smaller than plaintiff could make at other employments, but that it was necessary for said plain-

tiff to serve said apprenticeship in order to qualify himself to become a store manager, and the promise of the management of a store at the expiration of said period of apprenticeship was one of the prime considerations and inducing causes which induced plaintiff to enter into said contract of employment at said wages as above specified. That at the time of making said contract, it was further understood and agreed that after plaintiff became manager of a store, plaintiff would be promoted as fast and as rapidly as plaintiff developed ability to manage better and higher class stores." It was further alleged that, although plaintiff performed all of the conditions on his part to entitle him to a managership, and was qualified to act as such, the defendant refused to appoint him for the reason that it had changed its business policy and would not thereafter appoint as store managers men who had arrived at the age of plaintiff. It was further alleged that, after the plaintiff was wrongfully refused a managership, he commenced an action in the United States District Court for Oregon to recover damages for such alleged breach of contract, but that it resulted in a directed verdict for defendant for the reason that the alleged oral contract was not capable of being performed within one year and was therefore void under the statute of frauds. Plaintiff alleges that, by reason of these facts, the defendant should be estopped from asserting that plaintiff has been fully paid for the labor and services performed for its benefit.

Upon the trial plaintiff introduced evidence tending to show the extent and character of the work performed and that its reasonable value was $50 per week. There was no dispute as to the amount of payments made by defendant, but plaintiff stated that he did not agree to accept such payments, "solely as the con-

sideration for the services." In response to the question, "What were you to get for the services you rendered there?" the plaintiff answered, over the objection of the defendant, that "I was to get a store after a certain period, with a guarantee of twenty-five hundred dollars a year." Upon re-cross-examination, in response to the question, "And you knew you were during this period of time, not having reference to any later time, on the basis of eighteen dollars a week, nineteen dollars a week, twenty-one dollars a week, or whatever it was?" the plaintiff answered, "I knew I was not on that basis." Plaintiff further testified that there were two classes of employees, namely, a "straight employee" who was not working for a managership but was paid for overtime, and those who worked for less wages but in consideration of the opportunity for development and the right to obtain a managership. Relative to this phase of the case, the plaintiff testified:

"Q. Mr. McGilchrist, you have referred to two classes of employes, one working straight time and one as people working for stores. What do you refer to as people working for stores?

"A. Assistants.

"Q. Under what arrangements were they working?

"A. Well, they were working for less money than the people that were not working for stores.

"Q. Why were they doing that?

"A. They were working for stores.

\*　　\*　　\*　　\*　　\*

"Q. Now, what do you mean by working for stores; were you going to buy a store, or what were you going to do?

"A. I was going to manage a store.

"Q. All right. Now, did you agree to accept payments of this kind solely as the consideration for the services?

"A. No sir."

Further, on cross-examination, the plaintiff testified:

"Q. Those amounts that you received were the usual amounts paid to other people performing similar services?

"A. They were not.

\*     \*     \*     \*     \*

"Q. Now, the fact of the matter is, Mr. McGilchrist, that in a store such as F. W. Woolworth company \*  \*  \* they have a very definite system, do they not, with respect to the amounts of money they pay to people in subordinate capacities before they reach managerships, which system is perhaps lower than is paid in other lines of work?

"A. Not a definite system, I wouldn't say. Each manager has a system, in a way. Different stores pay different salaries, also to the girls."

The record further discloses that the plaintiff worked in the various departments of the stores of the defendant, averaging, as he says, from 16 to 17 hours per day during many weeks, and that he did everything within his power to learn the details of the business and to qualify for a managership. He further offered to show the terms of his employment and more about the agreement with reference to the managership, but, upon objection of the defendant, this evidence was excluded. Plaintiff, however, made an offer of proof in keeping with the allegations of the reply in reference to the contract under which he worked.

At the close of plaintiff's case in chief, the defendant moved for a nonsuit upon the following grounds:

"First: That the defendant is entitled to a judgment on the pleadings.

"Second: That it appears from the record in this cause that the plaintiff is relying upon a contract

which, by the allegations of the reply, is void and therefore no right of recovery can be based thereon, even in quantum meruit.

"Third: That if it be considered that a quantum meruit action will lie in this suit, that the plaintiff will be confined to the contract price, as to·which he has testified that he has received the contract price; and that is also counsel's opening statement.

"Fourth: That there has been a complete accord and satisfaction as to each and every week that the plaintiff worked for the defendant, and that it appears from the undisputed testimony that each week the plaintiff would receive his money, and that that money was received in full for the services for the preceding week; that any complaint that is made here with reference to the failure of defendant to perform with respect to appointing the plaintiff manager after the three-year period would have to do with a void contract and with a period of time which is not here involved or not here in question.

"Fifth: That this is a divisible contract, a severable contract, so-called, and that it has been performed with respect to each week that the plaintiff was employed, and has been performed on both sides with respect to that period of time, and that the law in dealing with a, contract of this nature, will subdivide that contract with respect to the periods into which it can be divided, in that respect this being different from a contract which is known as an entire contract rather than a divisible contract."

Upon the denial of this motion, the defendant rested its case without offering any evidence. A motion for a directed verdict was made by the defendant for the same reasons as stated in the one for a nonsuit. Under this state of the record, the cause was submitted to the jury and a verdict was returned in favor of the plaintiff in the sum of $2,899.80. Defendant appeals.

■■ We think a fair construction of the evidence received and that which was offered, but rejected by the court, tended to show that the plaintiff performed services for defendant at a wage less than the reasonable value thereof in consideration of the agreement of the latter to employ him as a manager at end of his apprenticeship. The contention that the evidence does not show a refusal of the defendant to appoint him to such a position is not, in our opinion, well founded. The evidence, in view of the demurrer thereto, is entitled to every reasonable intendment in favor of the plaintiff.

■ It was error for the court to exclude the evidence offered relative to the contract. It was not offered for the purpose of affording a basis for the action, but to establish the theory of the plaintiff that where labor and services are performed for another under an oral contract void by reason of the statute of frauds, the party benefited thereby must pay the reasonable value of such services. As stated in *Keller v. Bley,* 15 Or. 429 (15 P. 705):

"Proof of the contract was a circumstance in the particular case, was a part of the general facts, and the proof was merely to give an understanding of the circumstances connected with the affair. It is only when an agreement is sought to be enforced in accordance with its terms that the objection to its invalidity upon such a ground can be raised. If the work had all been done under a void contract, it would not prevent a party from recovering its value, though he would not be entitled to recover damages for the breach of the contract. A verbal contract to do work which, by its terms, is not to be performed within one year, is void; but if the parties treat it as valid until after a part of the work is done, it cannot then be avoided so as to avoid payment of the reasonable value of the work that has

been performed. The law, in such case, will imply a promise to pay for work, or other valuable thing obtained under such an agreement, although the terms of the agreement cannot be enforced in a court of justice.''

The evidence embodied in the offer of proof which the court rejected was of the very essence of plaintiff's cause of action. See 27 C. J., p. 380; *Blank v. Rodgers,* 82 Cal. App. 35 (255 P. 235); *Nastrom v Sederlin,* (Wyo.) 3 P. (2d) 82. As stated in *Kelley v. Thompson,* 181 Mass. 122, 63 N. E. 332:

''The only reason for ever letting a plaintiff show the oral agreement in such a case is that, unless this were permitted, the statute would be made the instrument of perpetrating a fraud; * * *.''

■■ The authorities are practically in accord that an action on quantum meruit may be maintained for services rendered under an oral contract unenforceable by reason of the statute: *Richter v. Derby,* 135 Or. 400 (295 P. 457.) The divergence of opinion among the courts arises as to whether, in such actions, the contract price controls and determines the measure of recovery: See cases in notes to L. R. A. 1916D, 900, and 49 A. L. R. 1121. It is the contention of appellant that the contract price is conclusive as to the value of the services rendered, citing in support thereof: *Union Savings & Trust Co. v. Krumm,* 88 Wash 20 (152 P. 681); *Mannix v. R. L. Radke Co.,* 166 Cal. 333 (136 P. 52); *Lally v. Crookston Lumber Co.,* 85 Minn. 257 (88 N. W. 846); *Spinney v. Hill,* 81 Minn. 316 (84 N. W. 116), quoting *Kriger v. Leppel,* 42 Minn. 6 (43 N. W. 484), wherein the court said:

''An oral agreement for services not to be performed within one year is not wholly void, though no

action can be maintained on it. It will control the rights of the parties with reference to what they have done under it."

However, we think the weight of authority and the better reasoned cases are to the effect that the contract may be received in evidence relative to the question of the value of the services, but that it is not conclusive and the jury may consider it for what it may deem it to be worth: *Williams v. Bemis,* 108 Mass. 91 (11 Am. Rep. 318) ; *William Butcher Steel Works v. Atkinson,* 68 Ill. 421 (18 Am. Rep. 560) ; *Clark v. United States,* 95 U. S. 539 (24 L. Ed. 518). In the case last cited, the United States Supreme Court, in considering whether a contract, void under the statute, may be received as conclusive evidence of the quantum meruit, said:

"Though not binding or conclusive, it may be regarded as admissible for that purpose."

In 27 C. J., p. 315, it is said:

"The statute of frauds not only precludes an action upon an oral contract within its terms, but according to the weight of authority it equally precludes the use of such a contract as the ground of defense to an action, and this is of course true in jurisdictions where the effect of noncompliance with the statute is to render the oral contract utterly void for all purposes." Citing in support thereof many cases.

*West v. Eley,* 39 Or. 461 (65 P. 798), and *Sinnock v. Zimmerman,* 132 Or. 137 (284 P. 838), are not to the contrary for in those cases the contracts involved were not void under the statute.

In our opinion it is inconsistent and illogical to urge the invalidity of a contract, void under the statute, to

defeat plaintiff's cause of action and then assert it to be binding and conclusive as to the measure of recovery. As stated in *Thacher v. New York W. B. & Ry.,* 153 App. Div. 186 (138 N. Y. S. 463):

"If, although the statute declared the contract to be void and incapable of enforcement, it could still be made use of to fix the respective liabilities of the parties, the statute would become a nullity."

■ We cannot agree that the contract in question is severable. If the agreement was as contended by the plaintiff—and there is no evidence to the contrary—the covenant to work for the weekly wage was related to the one in reference to the future employment as a manager. Accepting as true the plaintiff's version of the contract, it was not the intention of the parties that these covenants should be considered as separate, distinct, and unrelated The work which plaintiff performed was in consideration of the entire agreement and his rights are not to be determined by looking solely to one of the covenants therein. See Page on Contracts, § 2088.

■ We see no error in the refusal of the court to give requested instruction No. 9, for the reason that it was argumentative and assumed facts not in evidence. The last sentence thereof, "If the wages that were paid to Mr. McGilchrist fully complied with the standards (of the F. W. Woolworth Company) then he has no cause of complaint and your verdict must be for the defendant" is particularly objectionable.

■ Defendant complains because the court permitted plaintiff to testify concerning the reasonable value of his services. In *Smith v. Gevurtz,* 67 Or. 25

(135 P. 190), the court quoted with approval 1 Wigmore on Evidence, § 715, wherein the author stated:

"It would be a hard rule which would prevent a plaintiff from informing the jury of his own estimate of the value of his services; and the courts seem inclined to impose no terms as to his general familiarity with the class of services; that he has rendered them justifies listening to his opinion."

We conclude that this assignment of error is not well taken.

Neither do we think the court abused its discretion in determining that William McGilchrist was qualified to testify as an expert upon the question of value.

Finding no error in the record, it follows that the judgment of the lower court is affirmed.

BEAN, C. J., BROWN and ROSSMAN, JJ., concur.