ROBEY v. HARDY et al.

No. 4087.   Decided March 27, 1924.   (224 Pac. 889.)

1.   CORPORATIONS—EVIDENCE HELD TO ESTABLISH AGREEMENT FOR EXTENSION OF TIME FOR INCORPORATION OF PARTNERSHIP.   In an action to recover money loaned to a partnership under an agreement that it should immediately incorporate and issue to plaintiff capital stock in release and satisfaction of the loan, which provided •that the incorporation must be effected as rapidly as possible, and that stock certificates were to be delivered within 90 days, evidence of participation by plaintiff in incorporation activities after the lapse of such 90 days, his subscribing to the articles of incorporation and the corporate oath, *held* to establish an agreement on his part for an extension of the time within which incorporation was to be completed under the agreement.

2.   CORPORATIONS—EVIDENCE HELD TO ESTABLISH ASSUMPTION BY CORPORATION OF PARTNERSHIP DEBT TO PLAINTIFF AND PAYMENT BY ISSUANCE OF STOCK.   In an action by one who loaned money to a partnership under an agreement which provided for immediate incorporation and issuance to plaintiff of corporate stock in satisfaction of the loan, evidence *held* to establish that by common consent of all parties to the articles of incorporation, including plaintiff, the partnership obligation in favor of plaintiff was taken over and assumed by the corporation, and payment thereof made by issuing to plaintiff capital stock.

3.   CORPORATIONS—REMEDIES FOR WRONGFUL WITHHOLDING OF STOCK BY CORPORATION STATED.   One entitled to stock wrongfully with-

held by corporation has a complete remedy at law by a suit for conversion, or in equity, for a delivery of the certificate.[1]

4.  CORPORATIONS—OWNERSHIP OF STOCK NOT AFFECTED BY LACK OF POSSESSION OF CERTIFICATE. Lack of possession of a stock certificate does not affect ownership of corporation stock.

Appeal from District Court, Fourth District, Utah County; *J. H. Erickson*, Judge.

Action by Harry Robey against Le Roy Hardy and others, copartners doing business under the firm name and style of the Hardy-Madsen Transfer Company. Judgment for plaintiff, and defendants appeal.

REVERSED, AND REMANDED with directions to dismiss.

*Parker & Robinson*, of Provo, for appellants.

*Morgan & Huffaker*, of Salt Lake City, for respondent.

THURMAN, J.

On the 29th day of May, 1920, plaintiff and defendants entered into a written contract, the material provisions of which are in words and figures as follows:

"This agreement made in duplicate this 29th day of May, 1920, by and between Le Roy Hardy, Stanley S. Cheever and C. Elmer Madison, all of Provo, county of Utah, state of Utah, partners doing business under the firm name and style of Hardy-Madison Transfer Company, parties of the first part and Harry Robey, also of Provo aforesaid, party of the second part, witnesseth:

"That whereas, the said party of the second part has heretofore loaned to the said parties of the first part the sum of one thousand ($1,000.00) dollars, which money has been or will be used for the purchase of a new Paige truck, and to make the first payment upon said truck.

"And whereas, it is contemplated that articles of incorporation shall immediately be completed, changing said partnership into a corporation:

---

[1] *Coray* v. *Perry Irr. Co.*, 50 Utah, 70, 166 Pac. 672.

"Now, therefore, it is mutually understood and agreed by and between the parties hereto as follows, to wit:

"1. The said parties of the first part shall with all reasonable speed procure a certificate of incorporation from the secretary of the state of Utah, incorporating said business now a partnership, and shall then immediately issue to said Harry Robey, party of the second part, one thousand ($1,000.00) dollars worth of the capital stock of such new corporation at par in full release, satisfaction and settlement of the one thousand ($1,000.00) dollars heretofore paid by said party of the second part to said parties of the first part. Providing, however, that should a certificate for said capital stock not be delivered to said party of the second part within thirty days from the date hereof, then and in that event interest shall begin to run upon the said one thousand ($1,000.00) dollar loan at the rate of four per cent. per annum.

"2. Provided further, that if for any reason said capital stock certificate in proper form shall not be delivered to said party of the second part within ninety (90) days from the date hereof, together with cash payment of any interest on said one thousand ($1,000.00) dollar loan occurring thereon as hereinbefore set forth, then and in that event the said sum of one thousand ($1,000.00) dollars shall immediately become due and payable in legal tender by said parties of the first part to said party of the second part, together with interest at four per cent. per annum from a date thirty (30) days after the date of these presents, and a reasonable attorney's fee if necessary to employ an attorney for collection of same."

"4. It is further expressly understood and agreed, that said party of the second part is not to be for any purpose considered a partner in the said Hardy-Madison Transfer Company, but is merely an employé and creditor until incorporation of said firm, is completed, and stock issued to him.

"In witness whereof, the parties hereto have hereunto subscribed their names on the day and year first above written."

It is alleged in the complaint that defendants have not delivered to plaintiff the $1,000 worth of stock, nor paid him the sum of $1,000, or any part thereof, and that $250 is a reasonable attorney fee for collecting the amount due. Plaintiff prays judgment for $1,000 as principal, with interest thereon, and attorney fees as provided in the contract.

The defendants answering admit the execution of the contract as alleged in the complaint and that at the time of its execution defendants were partners as alleged. They deny that they have not delivered to plaintiff the $1,000 worth of stock or that they have not paid him the $1,000, and interest

thereon.   They admit the remaining allegations of the complaint in so far as they conform to the contract alleged in the complaint.

Further answering the complaint, defendants, as far as material here, in substance, allege that the time within which the company was to be incorporated and the delivery of the certificate of stock to the plaintiff was by mutual agreement of plaintiff and defendants extended from time to time until the 5th day of March, 1921; that articles of incorporation were duly executed and filed as required by the laws of Utah and certificate thereof issued by the secretary of state.

The answer further alleged that the articles of agreement of said corporation were signed by plaintiff and defendants and that by reason thereof plaintiff became a stockholder of said corporation; that a certificate of stock in pursuance of said subscription by plaintiff was duly and regularly issued by said corporation and its officers, and on or about the 5th day of March, 1921, a certificate for 1,220 shares of said stock of the par value of $1 per share was tendered to the plaintiff, but plaintiff refused to accept the same; that defendants and said corporation have been at all times ready and willing, and are now ready and willing, to deliver said certificate of stock to plaintiff.

By a subsequent amendment to the answer, made during the trial of the case by permission of the court, with the understanding that it was only allowed to make the pleading conform to the evidence theretofore introduced, it is further alleged that by the provisions of the articles of incorporation plaintiff and defendants agreed that all the property of the defendant partnership, including the Paige truck referred to in plaintiff's complaint, should be and the same was sold, transferred and conveyed to the "Hardy-Madsen Transfer Company," which was the name of the corporation organized by plaintiff and defendants, and it was also agreed in said articles of incorporation that the corporation should assume and agree to pay all of the outstanding debts and liabilities of said partnership (defendant), and it is alleged that be-

cause of said agreement the plaintiff released and discharged the defendants from any responsibility by reason of the agreement referred to and relied on in plaintiff's complaint.

It is also alleged in the amendment to the answer that at the time of the execution of said articles of incorporation it was mutually agreed by the parties thereto that plaintiff was to accept said certificate of stock as full payment and full settlement by the defendants of all indebtedness or liability of defendants to plaintiff by reason of the contract relied on in his complaint.

The articles of incorporation are attached as an exhibit and made part of the answer. They were subsequently admitted in evidence.

The case was tried to the court without a jury, and the issues found for plaintiff. Judgment was entered accordingly. Defendants appeal, and assign as error certain findings of the court and its conclusions thereon.

In the third finding, the court finds that the company was not incorporated until the month of February, 1921; that plaintiff subscribed for 1,220 shares of the capital stock but that there never was any agreement that the subscription to said stock should be in lieu of the payment of the $1,000 and interest; that defendants never delivered to plaintiff the 1,220 shares of stock, nor any portion thereof, nor paid plaintiff the $1,000, nor any part thereof, nor the interest thereon.

In the fourth finding the court finds that there never was any valid agreement whereby plaintiff agreed to extend the time of performance by defendants, as alleged in defendants' answer, or at all. These findings are assailed by defendants as being unsupported by the evidence.

As we view the case, the circumstances render it unnecessary to enter upon an extended review of the evidence.

The plaintiff testified that the certificate of stock had not been delivered to him and that he had not been paid the $1,000 and interest thereon. On cross-examination he admitted he had signed the articles of incorporation and the oath attached thereto and that he became a director of the

corporation. He admitted seeing the certificate of stock referred to as being for him on March 5, 1921, and said he would have accepted it at that time. It had been signed by the secretary but not by Mr. Hardy (the president). He said they did not offer him the stock at that time. Plaintiff also admitted he had never turned over to the defendants or the corporation any money except the $1,000 mentioned in the agreement referred to in his complaint. In other words, as we understand his testimony, and all the testimony, he never paid anything for the 1,220 shares of stock for which he subscribed unless it was by the $1,000 referred to in his complaint for the recovery of which this action was brought.

While there does not appear to have been any formal agreement extending the time within which defendants might perform the agreement relied on by plaintiff, yet the circumstances are such that no other inference can be drawn therefrom than that there was an understanding to that effect. The evidence is uncontradicted that during all the year 1921, after the agreement referred to in the complaint, plaintiff and defendants were working together to the end and purpose of organizing a corporation. Just why they did not complete the organization earlier does not satisfactorily appear, but that is immaterial in view of the fact that when it was completed plaintiff became an incorporator, subscribed to the articles as such, subscribed for 1,220 shares of stock, and was one of the parties who subscribed to the corporate oath, and was made a director of the corporation. These circumstances are just as conclusive of the fact that the time within which to effect a corporation was extended with plaintiff's consent as it would be if plaintiff had solemnly admitted the fact. Indeed, it was an admission of the most satisfactory kind. It follows therefore that the finding of the court that there was never a valid agreement to extend the time of defendants in which to perform their agreement with the plaintiff is not only not supported by the evidence, but is contrary thereto.

As to whether there never was any agreement that plain-

tiff's subscription to the capital stock of the company would be in lieu of the payment of $1,000 and interest, as found by the court in its third finding, and further, as to whether defendants have not paid the $1,000 to plaintiff, as found by the court in the same finding, we are again under the necessity of relying upon indubitable facts and circumstances rather than upon the verbal testimony of witnesses. This calls for an examination of some of the articles of incorporation, to which the plaintiff was a party.

Article 2 states the names, places of residence, and number of shares of the incorporators, among which is the name of plaintiff subscribing for 1,220 shares. Article 6 provides that the capital stock shall be $10,000. Article 7 states the number and kind of officers, to wit, five directors, a president, secretary, and treasurer. Article 8 states the name of the first officers, among whom plaintiff is named as a director. Article 14 describes the property purchased and taken over by the corporation, which consists of the property theretofore owned by the defendants, as partners, including the Paige truck referred to in plaintiff's complaint subject to the debts of said partnership estimated to be about $3,000, which debts the corporation assumes and agrees to pay. Article 15 states that said property is necessary to the pursuit or business of the corporation, that its fair cash value, over and above all indebtedness is $6,965, and that said property is immediately conveyed to the company in full payment of 6,965 shares of the capital stock of said corporation.

There are, of course, other articles necessary to constitute a corporation, which we omit because they are immaterial in the instant case. The articles are signed by all of the incorporators, all of whom are officers, including the plaintiff. Then comes the corporate oath signed by all the officers of the corporation. As we regard the language of the oath as of special significance in this connection, we quote the same at length:

"Le Roy Hardy, Harry Robey, C. Elmer Madison, Stanley S. Cheever, and Elmo S. Cheever, being first severally duly sworn, each for himself, deposes and says: That he is one of the incorporators named in the foregoing articles of incorporation of the

Hardy-Madison Transfer Company; that said company has commenced, and it is its bona fide intention to continue to carry on the business and pursuits mentioned in said agreement; *that he verily believes that each party to said agreement has paid the amount of his stock subscribed, in full, excepting only Le Roy Hardy who has paid two thousand three hundred and thirty three ($2,233.00) dollars*, and is able to pay and will pay the balance of two thousand eight hundred, sixty-seven ($2,867.00) dollars which he still owes, and that more than ten per cent. of the capital stock of said corporation has been paid in. Further, that he is acquainted with all the property taken in payment for stock herein and that said property is fully worth the amount in cash for which it was accepted by the corporation, over and above all indebtedness of whatever kind against said property." (Italics supplied.)

When plaintiff and the other officers subscribed to this oath, each and every one of them knew that the plaintiff had not paid for his stock unless he had done so by releasing the defendants from their partnership obligation to him and accepting in lieu thereof 1,220 shares of the capital stock of the corporation. The par value of the stock was $1 per share. The 1,220 shares were undoubtedly accepted by plaintiff in full payment of both principal and interest of the partnership indebtedness, or else the interest was waived and the amount calculated on the basis of profits made after the date of the partnership agreement. Just why the 220 shares were allowed the plaintiff is not of controlling importance. The vital question is, Can plaintiff's conduct in respect to this entire transaction be explained upon any other reasonable hypothesis than that he subscribed for the 1,220 shares of stock and paid therefor by releasing the defendants from the partnership obligation to pay him $1,000 and interest? If there is any evidence from which any other conclusion can be drawn, the writer, after a careful examination of the record, has been unable to discover it.

From the facts and circumstances of the case as above set forth, the court is irresistibly led to the conclusion that by common consent and acquiescence of all the parties to the articles of incorporation, including the plaintiff, the partnership obligation of defendants theretofore existing in favor of the plaintiff was taken over and assumed by the corpora-

tion and payment thereof made by the corporation by issuing to plaintiff 1,220 shares of its capital stock. This being the case it is manifest that whatever cause of action plaintiff may have, if any, for the grievances complained of, is against the corporation and not against the defendants. If the corporation is wrongfully withholding from him the certificate of stock for which it appears he has fully paid, he has a complete remedy either at law or in equity, as he may elect. *Coray* v. *Perry Irr. Co.*, 50 Utah, 70, 166 Pac. 672. He can sue at law for the conversion of the stock, or in equity for a delivery of the certificate; but in either case his remedy is against the corporation and not against the defendants.

The judgment of the trial court is not only technically wrong for the reasons stated, but it is inequitable and unjust, inasmuch as plaintiff was awarded judgment, for the partnership indebtedness and interest, together with attorney's fees and leaves him still owning 1,220 shares of stock in the corporation. The fact that he does not hold the certificate in no manner affects his ownership of the stock.

The judgment is reversed, and the cause remanded to the court below, with directions to dismiss the action at respondent's cost.

GIDEON, FRICK, and CHERRY, JJ., and WOOLLEY, District Judge, concur.

WEBER, C. J., did not participate herein.