387 P.2d 246

**BENNETT LEASING COMPANY, Plaintiff and Respondent,**

v.

**David J. ELLISON et al., Defendants and Appellants.**

No. 9824.

Supreme Court of Utah.

Nov. 26, 1963.

Henriod, C. J., and Callister, J., dissented.

Cotro-Manes & Cotro-Manes, Salt Lake City, for appellants.

Harris & Henriod, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant, David J. Ellison, appeals from a judgment against him for $1,144.52 for use of a 1959 Ford Ranch Wagon furnished by the plaintiff, Bennett Leasing Company.

Plaintiff's complaint contained two counts: In the first it sought to recover upon an express contract leasing the car for 24 months at the rate of $79.49 per month, alleging use for 22 months; and also for $173.35 for repairs, $33.48 for "late" charges, and $130.00 for adjustment for the time remaining when the car was repossessed, all as provided under the terms of the contract; and on its second count, for the reasonable value of the use of the car.

The pretrial was before Judge A. H. Ellett. When it appeared that the proposed written contract had not been signed, he recited in the pretrial order that:

"The plaintiff admits that the contract upon which it claims * * * was not in writing. The court therefore holds as a matter of law that

said count is barred by the statute of frauds.[1]

"The only issues to be determined between the plaintiff and defendant, David J. Ellison, are as follows:

"1. Was the contract made with David J. Ellison or with Duane T. Cardall?

"2. What would be the reasonable value of the rental of the automobile?"

The case proceeded to trial before Judge Joseph G. Jeppson, sitting without a jury. The findings recite that:

" * * * the court having *heard the testimony*, and having examined the proofs * * * makes its findings of fact as follows:

"1. That on or about September 8, 1959, Defendant David J. Ellison leased from Plaintiff a 1959 Ford Fordor Ranch Wagon automobile, under an oral lease for approximately 24 months.

"2. That the Ford automobile described in Paragraph 1 above was furnished by Plaintiff to Defendant David J. Ellison, and that said Defendant used the automobile for approximately 22 months.

"3. That Plaintiff is entitled to the reasonable value of the use of the said

1. Sec. 25-5-4, U.C.A.1953 provides that certain agreements are void: * * * (1) Every agreement that by its terms is not to be performed within one year from the making thereof.

vehicle for 22 months and that a reasonable value for use of the vehicle is $1,748.76.

"4. That periodic payments made on the said lease totalled $604.24.

"From the foregoing Facts, the court concludes:

"1. That Plaintiff, Bennett Leasing Company. is entitled to judgment against Defendant David J. Ellison in the sum of $1,144.52."

The court did not allow the plaintiff to recover for the other items of damages claimed under the express lease.

 The argument that it is not shown that defendant Ellison was personally responsible for the rental of the car is untenable. When the appellant attacks the judgment on the ground that the evidence does not support the findings, he has the burden of bringing a transcript of the evidence adduced at the trial to this court so the merit of his contention can be ascertained. The record brought to this court consists only of the court file containing the usual various pleadings, motions, orders, findings and judgment; and supplemented by interrogatories, requests for admissions and two contracts introduced in evidence. But there is no reporter's transcript of the

evidence or of what happened at the proceedings at which the court recites it "heard the testimony." In the absence of a transcript of the evidence we are obliged to assume that it would support the findings.[2]

Defendant argues that in arriving at the amount of $1,144.52 the court appears to have done a contradictory thing: in that, whereas Judge Ellett had ruled that the proposed express contract was invalid because of the statute of frauds, Judge Jeppson must have looked to it as evidence of the rental value because the amount recited in the contract, $79.49 per month, less the amount paid, computes to the amount of the judgment. It is defendant's position that such contract having been stricken down, it could not properly be considered for any purpose; and that consequently there is no evidence of rental value upon which to base the court's finding.

 The answer to this contention is twofold: the first is as stated in the point discussed above: there being no transcript of the evidence, we must assume it supports the finding. The second is that even though the proposed agreement between the parties was not signed and was therefore barred from enforcement by the statute of frauds, that does not prevent the trial

2. See Watkins v. Simonds, 14 Utah 2d 406, 385 P.2d 154; Dahlberg v. Dahlberg, 77 Utah 157, 292 P. 214, in which this court held that where the evidence was not brought to the Supreme Court the findings of fact were unassailable; see also In re Voorhees Estate, 12 Utah 2d 361, 366 P.2d 977; Steiner v. Steiner, 160 Cal.App.2d 665, 325 P.2d 109; Teets v. Richardson, 131 Colo. 592, 284 P.2d 233.

court from considering the proof concerning the proposed agreement between the parties as at least some evidence of the rental value.[3] The fact that this was an odd amount of $79.49 per month does not necessarily preclude the court from adopting that figure, if it believed, as it is apparent that it did, that such was the reasonable charge for the use of the car.

Nor do we find merit in the contention that inasmuch as the proposed written contract to rent the car was determined to be unenforceable, the plaintiff therefore cannot recover on the quantum meruit count. For the purpose of ascertaining whether the plaintiff is entitled to some relief, the proposed express contract can be bypassed just as the trial court did. The fact that the parties attempted but failed to complete a written contract does not foreclose the possibility that other contractual obligations could arise between them. Regardless of the abortive express contract, the fact cannot be escaped that the trial court found that the defendant Ellison had used the plaintiff's car for 22 months. The contract had thus been performed to that extent; and Ellison had to that extent used the plaintiff's car. In equity and good

conscience he should not be permitted to accept this benefit, then invoke the statute of frauds with the result of cheating the plaintiff out of payment for the car it furnished him.

We are in accord with authorities which indicate that where one party has furnished and the other has accepted and used goods or services, even though pursuant to a contract which may be barred from enforcement by raising the statute of frauds, the former may nevertheless recover from the latter for the reasonable value of such goods or services.[4] Accordingly, in the instant case the trial court very properly charged the defendant for the use of the car, less credit for the amounts which had been paid on the account.

Judgment affirmed. Costs to plaintiff (respondent).

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I respectfully dissent. The main opinion produces an unusual paradox. The suit was filed on the theory that defendants

3. That evidence of an unenforceable oral contract fixing prices for services may be considered as some evidence of the value of the services, see McGilchrist v. F. W. Woolworth Co., 138 Or. 679, 7 P.2d 982; and 49 Am.Jur. 880, Statute of Frauds, Sec. 573.

4. For authorities in accord cf. Puetz v. Carlson, 139 Mont. 373, 362 P.2d 742; Orella v. Johnson, 38 Cal.2d 693, 242 P. 2d 5; and Baugh v. Darley, 112 Utah 1, 184 P.2d 335; Fabian v. Wasatch Orchard Co., 14 Utah 404, 125 P. 860; see 49 Am.Jur. 862, Statute of Frauds, Sec. 556.

Cardall and Ellison were *jointly* liable for rental of a car for 24 months. There was no writing to that effect, so that the alleged contract obviously was vulnerable to the statute of frauds.[1] Nonetheless, a judgment was taken against Cardall based on the alleged contract, which judgment persists *on that theory*. Ellison was relieved of a judgment taken against him, and he set up the statute of frauds as a defense. He was successful in his assertion. Thereafter, Bennett amended its complaint *as against Ellison*, departing from its original position and claiming, as against Ellison, a right to recover under a quantum meruit theory. So we have the novel situation where Bennett has a judgment against Cardall for $1,548.01 for breach of an *express* contract, and one against Ellison for $1,144.52 for breach of an *implied* contract. Bennett is now in a position to collect $1,548.01 from Cardall and also $1,144.52 from Ellison, born of identical facts. Each judgment is a lien against the respective properties of each of the defendants, and it would be heartless to suggest that two attorneys would pass title to both properties, if Cardall and Ellison attempted to sell their homes, based on some kind of calculated differential between $1,548.01 and $1,144.52. It is my opinion that if Cardall sold his home *first*, paying off the judgment lien against him, Ellison would have a rough time convincing anyone, including lawyers and title companies, that his home was free of encumbrances. This case does not represent a judgment against joint defendants for an identical amount, the payment of which would wipe out the judgment debt. It represents a situation where two wholly independent judgments are placed on the books, neither one of which can erase the other. This court talks of equity, unjust enrichment, quantum meruit, etc. but seems to overlook the Torrens system and procedural equities where the plaintiff sues two people jointly, taking individual judgments against one on one theory, and against the other on an entirely different theory.

The main opinion makes much about the trial court's framing of issues in the pretrial order when it says, "Was the contract made with * * * Ellison or * * * Cardall?" Up to date this question neither verbally nor in written admission has been answered. The evidence reflected in the record is that it was made by Cardall, against whom judgment was taken. Why the trial court thought it was important to determine which of the two *made the contract* when the court declared it void is not understandable by this writer. The very next issue required in the pretrial order was, "What would be the reasonable value of the rental of the automobile?"—a question quite inconsistent with any determination as to *who* made the contract. It seems

1. Title 25–5–4, Utah Code Annotated 1953.

to me that the question should have been, "Who was bound under an *implied* contract?" which seems to call for the answer, "No one," since plaintiff already had taken judgment against one of two alleged joint copromisors under an express joint contract obligation and theory.

The main opinion seems to reflect that there was significance in the trial court's statement about the case coming on regularly for trial, and "having heard the testimony," [2] made findings: 1) that Ellison contracted to lease a car from Bennett, and 2) that Ellison used it for 22 months, Bennett being 3) entitled to the value of its use, and 4) that $604.24 had been paid. The first finding was immaterial completely, since the court had decreed that there was no contract, but quite significantly that finding appeared to be of import to someone, since it seems to have lent some kind of comfort or sanction without support in the evidence to the effect that the $79.49 monthly payment under an unenforceable contract happened to be exactly the market value of the use to which the car was put. To this writer this conclusion completely ignores the profit factor that Bennett must have had in mind in letting his rental unit out for use by others. This of itself reveals the fallacy of this whole case. No such conclusion is justified by the almost casual observation that appellant should have brought a record of the evidence with respect to value of use to this Court. He *did* bring the record to this Court. The evidence obviously was that produced by the discovery process, including answers to interrogatories. The main opinion overlooks the fundamental principle that the *plaintiff* is the one upon whom the burden is placed to prove the market value in a quantum meruit case,—and there is not a syllable of evidence produced by plaintiff except an allegation in a pleading that was abandoned, based on a void contract, to support any such conclusion. It would be unthinkable, even to a layman, to assert that under a drive-it-yourself car rental contract that is void, the rental stated therein, being itself void, could be used as any evidence of market value or benefit conferred. The market value could be 50% below an agreed rental value in a particular case, especially where the contract, as here, was void, and for the main opinion to suggest that a defendant must bring evidence to discount an unproven judgment as to value, when the plaintiff has not sustained his burden of proving such value, is a novel departure from fundamental principles of pleading and proof. No evidence having been offered by plaintiff as to value or benefit to defendant, his complaint should have been dismissed,—irrespective of statute of frauds problems.

2. Which obviously was meant to be answers to interrogatories, etc., since there is no notation in the record that anyone at the so-called trial was sworn.

The main opinion seems to imply that because the court found that there were periodic payments totalling $604.24, defendant· must have paid it, thus ·implying ·that such part performance took the contract out of the statute of frauds. If that be the implication, the· judgment should have been based *on the contract*,—not on a· quantum meruit basis. The fallacy is twofold: 1) there is a complete absence of evidence that· Ellison made any payments. The presumption is that if anyone paid anything, it was defendant Cardall, against whom a· judgment was taken under an express agreement, with credit having been given to *him* for the payment; furthermore, if that be the implication, it cannot be sustained under the authorities, which generally hold that where personalty and not land is. involved, part performance does not cut under the· statute of frauds,[3] and since the void contract is in no way involved here, part performance is no factor or issue.

CALLISTER, Justice (dissenting).

I dissent. I agree that under the appropriate circumstances an action in quantum meruit will lie where the contract between the parties is void because of the statute of frauds. However, I have serious doubts that such a void contract may be used as evidence in such an action. In the instant case the only evidence of value introduced by plaintiff was the void contract. The lower court saw fit to adopt the monthly payment set forth therein as the reasonable rental value of the automobile. Thus, we have the anomalous situation of enforcing an unenforceable agreement.

---

3. 6 A.L.R.2d 1053, at 1067; A.L.R.2d Supplement, 1962, at 169.