405 P.2d 346

**Gary M. NAGLE, Plaintiff and Appellant,**

**v.**

**CLUB FONTAINBLEU, a Utah corporation, Defendant and Respondent.**

**No. 10198.**

Supreme Court of Utah.

Aug. 26, 1965.

Halliday & Halliday, Paul M. Halliday, Salt Lake City, for appellant.

Dansie, Ellett & Hammill, Murray, for respondent.

CROCKETT, Justice.

Gary M. Nagle, a building contractor, sued defendant Club Fontainbleu, a recre-

ational club located at 1651 Vine Street in Murray, for payment for construction on the club properties; to recover on a promissory note for $11,000.00 the club had given him for part of the work; to enforce an agreement for forfeiture of the club property upon default in payment of the note; and/or to foreclose a lien for labor and materials in the total amount of $25,291.27 against the club property for all of the construction done by Nagle thereon.

Upon a trial to the court, it found that the club was indebted to Mr. Nagle in the amount of $19,738.48, including the promissory note, but ruled that the agreement to forfeit the club property in case of default on the note was a penalty and unenforceable; and that his claim of lien was invalid.

On appeal the plaintiff makes no complaint of the amount of the judgment, but due to the defendant's financial condition, contests each of the trial court's rulings just stated which deprive him of recourse to the club's property to enforce collection of his money.

The defendant club originally purchased two parcels of land at about 1600 Vine Street totalling about 12.35 acres. Part of this land was sold to the plaintiff Nagle for residential building lots and the club retained 6.35 acres for its own use. The parties had a common interest in developing and providing utilities for the property.

In May of 1960 they entered into an agreement whereby plaintiff would make certain improvements including installation of a water line and a sewer; and construction of a bridge and a roadway, for which each would pay a proportionate share of the costs. He proceeded with this project and in August of 1961 submitted an itemized billing of $12,277.26 for the defendant's share which it accepted and approved. Meanwhile plaintiff had become a member of the club and was elected as a member of its board of directors. In March of 1962 the club requested him to build a club house and swimming pool which he proceeded to do. In the summer of 1962 there were some discussions about Nagle being paid. The defendant executed a promissory note for $11,000.00 in his favor payable in one year, which was to pay for the major part of the improvements. Concurrent therewith the defendant also executed what is entitled an "Agreement and Assignment" to assure payment of the note, which in material part stated:

"This assignment is given to Assignee [Nagle] for the purposes of securing to the Assignee the payment of said promissory note of the Assignor [Club Fontainbleu] * * * the Assignor agrees that the Assignee, at his option, *may foreclose the rights of the Assignor in the manner provided for real estate mortgages,* or may enter and take possession of said premises togeth-

**128**

er with all improvements and additions thereon, and that any amount theretofore repaid by Assignor to Assignee may, at Assignee's option, be retained by him as liquidated damages. In said event, the Assignor further agrees that it will upon demand execute and deliver to Assignee a quitclaim deed of all of its right, title and interest in and to the above described property and improvements * * *." Emphasis added.

Neither the title of the "Assignment" nor any superficiality of its language are controlling. Where the intent and purpose can be ascertained it should be enforced in accordance with its substance. From the provision quoted above it is plain that it was intended as a pledge of the club's property as security for the payment of the note, and was in effect a mortgage. Speaking about a similar instrument, which was not a mortgage in the usual form, the Supreme Court of Kansas stated that, "The instrument is a mortgage, for it evidences a debt and contains a promise to pay out of the property." [1] With this we agree. Accordingly, insofar as the $11,000.00 promissory note is concerned, the plaintiff should be allowed the remedy given him in the assignment "to foreclose the rights of the assignor [defendant Club Fontainbleu] in

the manner provided for real estate mortgages * * *" in the event of the defendant's refusal to pay it.

In relation to this note it is appropriate to state that after the plaintiff gave notice on April 10, 1963 that he deemed himself insecure and demanded payment of the note, the defendant offered to pay it, but without attorneys fees, which offer plaintiff refused. We find no basis in the record upon which to disagree with the finding of the trial court that the plaintiff had deemed himself insecure and attempted to accelerate the note prematurely, nor with its holding that he was therefore not entitled to attorneys fees thereon. In regard to the enforcement of the collection of this note, we further observe that the rule relating to the refusal to apply a forfeiture, where that would produce a result so shocking to the conscience that a court of equity will not enforce it,[2] has no application to the procedure for the foreclosure of a mortgage, which provides the mortgagor with the protections allowed by law in the foreclosure sale and the opportunity to redeem.

In view of our conclusion that the plaintiff should be allowed recourse against the defendant's property in the nature of a mortgage foreclosure, if necessary, to enforce collection of the $11,000.00 promissory

1. See Hill v. Hill, 185 Kan. 389, 345 P.2d 1015.

2. See Perkins v. Spencer, 121 Utah 468, 243 P.2d 446 (1952); Young v. Hansen, 117 Utah 591, 218 P.2d 666 (1950).

note, plus the interest thereon, the question as to the validity of the plaintiff's claim of lien up to that amount, and whether it was merged in the note, is moot. We say this without any disposition to disagree with the rule apparently given some credence by the trial court, that a lower form of obligation, such as an unliquidated account for labor and materials, is usually merged in a higher form of obligation, such as a promissory note. This rule undoubtedly has merit under the proper circumstances.[3] But it clearly appears here that the note was intended by the parties to pay for only part of the work done, so in any event, such a merger could only have been up to the amount of the note. Furthermore, the September 1 agreement expressly stated that, "That assignee [Nagle] at his option shall have the right * * * to file and prosecute any mechanics or materialmens lien he may have against said property."

This brings us to the further question: Is the plaintiff entitled to a lien on the defendant's property for the amount the court found owing him in addition to the note? This appears to depend on whether the last work was done or material was furnished within the eighty days allowed plaintiff as a general contractor to file his lien,[4] which he did on December 17, 1962. No one questions that this must be something substantial in connection with performance of the contract as opposed to something merely minor or trivial which might be used as a pretext to extend the lien period.

The work was begun in November of 1960 and continued variously until in 1962. The club house and swimming pool were completed for occupancy and use in the summer of 1962. The plaintiff contends that substantial work including the installation of a bridge and the construction of a road were done thereafter and that the project was not finally completed until in November 1962; whereas the defendant asserts that "all of the construction work done by the plaintiff was completed during the spring of 1962, with the exception of the hanging of one door in November 1962" and that the lien was not filed until "at least five months after the last substantial work done or materials furnished" by the plaintiff. Inasmuch as the trial court resolved this controversy against the plaintiff, ruling that his claim of lien was invalid, he had the burden of demonstrating to the contrary on this appeal.[5] Only a partial transcript of

---

3. Note: We do not here confront the question whether a promissory note is superior to and merges a right to claim a lien. That it may depend upon the intent of the parties, see McMurray v. Taylor, 30 Mo. 263; 65 A.L.R. 283; 57 C.J.S. Mechanics' Liens § 226, p. 798; and cf. Doane v. Clinton et al., 2 Utah 417.

4. 38-1-7, Utah Code Annotated, 1953.
5. That presumptions are in favor of the trial court's findings and judgment and the burden is on the appellant to show to the contrary see Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176.

the trial, containing excerpts from the testimony, has been brought here. Upon reading it we perceive therein nothing which would compel a determination contrary to that made by the trial court. As to any other evidence that may have been adduced, in the absence of a transcript, we are obliged to assume that it supports the findings and judgment.[6]

 The judgment is affirmed, except as indicated herein, and the case is remanded for further proceedings not inconsistent with this opinion. The parties to bear their own costs.

HENRIOD, C. J., and McDONOUGH, WADE, and CALLISTER, JJ., concur

---

6. See Watkins v. Simonds, 14 Utah 2d 406, 385 P.2d 154; and Bennett Leasing Company v. Ellison et al., 15 Utah 2d 72, 387 P.2d 246.