407 P.2d 565

**OWYHEE, INC., a corporation, Plaintiff, garnishee plaintiff and appellant,**

v.

**ROBBINS MARCO POLO, aka and dba Robbins Mark-O-Polo, a corporation, and Robbins Travel International, Inc., a corporation, Defendants and judgment debtors,**

v.

**Dwight G. LUMAN, Garnishee defendant and respondent.**

No. 10162.

Supreme Court of Utah.

Nov. 5, 1965.

---

1. Sheild v. Welch, 4 N.J. 563, 73 A.2d 536.

2. Sec. 57–1–31, U.C.A.1953, Replacement Volume.

Kent Shearer, Neslen & Mock, Salt Lake City, for appellant.

Critchlow, Watson & Warnock, Ned Warnock, Salt Lake City, for respondent.

CROCKETT, Justice:

Plaintiff, Owyhee, Inc., challenges a ruling of the trial court that it was not entitled to recover on a garnishment against the garnishee defendant, Dwight G. Luman.

Owyhee, Inc., sued and obtained judgment against the defendant, Robbins Travel International, Inc. (hereinafter referred to as Robbins, Inc.). Thereafter it issued a garnishment against Luman, contending that he had money belonging to Robbins, Inc. This was based upon the claim that Robbins, Inc. had repurchased some of its own stock from Luman, and thus impaired its capital, a transaction which is prohibited and made void by Sec. 16–2–15, U.C.A. 1953,[1] which provides that: "No corporation shall * * * divide, withdraw, or in any manner except as provided by law pay to the stockholders or any of them, any part of the capital of the corporation. * *"

Early in 1960 Allen B. Robbins, owner and manager of Robbins, Inc., and the garnishee defendant Luman on several occasions talked about the latter putting some money into Robbins, Inc. and taking a job

---

1. Citations are to Title 16, Chapter 2, U.C.A.1953, which was in effect at all times pertinent herein. The new Utah Business Corporation Act became effective January 1, 1962.

with it in an executive capacity. Consequent thereto in February or March 1960, in return for a promise that he would receive a percentage ownership and become an officer and employee, Luman paid Robbins $4000. Nothing was ever done about issuing any stock to him. Practically from the inception of their working together, difficulties existed between them. Luman was dissatisfied with the arrangements imposed by Robbins. Robbins, on the other hand, did not like Luman as an employee. In less than sixty days their dissatisfactions were resolved by the parties agreeing to go their separate ways. However, Robbins did not return Luman's money, but gave him a promissory note for the $4000, which he signed personally and as president of the corporation. Payments were made aggregating $1900 by May of the following year; and when no further payments were forthcoming, Luman sued and obtained a default judgment for the balance on the note.

It was nearly two years after the transactions above referred to that the plaintiff, Owyhee, Inc., made advancements to and became a creditor of Robbins, Inc. Still later, after Robbins, Inc. failed to pay Owyhee, Inc., the latter brought this action against Robbins, Inc., took judgment, and as an aid to collecting it issued the garnishment seeking to recover from Luman the $1900 Robbins had repaid Luman on the theory that this was a repurchase of its own stock by Robbins, Inc. and was there-fore a void transaction under the provision of Sec. 16–2–15 quoted above.

In refusing to impose liability upon Luman for the debt of Robbins, Inc. to plaintiff Owyhee the trial court entered a "Memorandum Decision" containing the following:

A. "This court is not going to determine that this was a stock transaction or a loan transaction, but the finding of the court is that * * * [it] * * * took place long prior to the indebtedness of the Robbins Travel Corporation and that it was not a void transaction."

It also indicated therein that even if this were a stock transaction:

B. " * * * it would appear to the court that it is clearly exempt by Sec. 16–2–16, Subsection (a), and would thus not be a void transaction * * *"

This section exempts from the effect of the statute the purchase by a corporation of its own stock "to collect or compromise, in good faith, a debt, claim or a controversy with any shareholder; * * *"

The trial court further found that:

C. "It clearly appears from the evidence that the financial structure of the Robbins Travel Corporation was not in any way affected by the transaction between plaintiff and defendant."

A. *The refusal to find this a repurchase of corporate stock.*

We first direct our attention to the charge that the trial court erred in refusing to find that the transaction was a repurchase of its stock by Robbins, Inc. In support of its position plaintiff points out that it is without dispute that the negotiations between Robbins and Luman contemplated the purchase of stock by the latter and that he in fact paid his money. It urges the proposition with which we have no disagreement: that where the purchaser pays his money for stock in a corporation the ownership of the stock is usually in equity regarded as vested in him; and that the certificate is not the stock itself, but is merely the evidence of stock ownership.[2] However, this presupposes a definite contract under which it was so intended by the parties. Under the evidence in this record there is at least room for doubt that the deal ever progressed to that degree of certainty. It is inferable that there was a lack of understanding between them from the beginning. It is not shown that they ever arrived at the amount of stock Luman was to receive. At the time of the trial he said it was to be 48% of the enterprise, while Robbins said it was to be 40%.[3]

Furthermore, the rule contended for is applicable in regard to the rights of the parties inter se and does not extend to third parties unless they were in some manner led to rely upon it. Whatever the transaction between Robbins and Luman may have been, there is no basis upon which it could possibly be found that the plaintiff was in any way misled or adversely affected by it. Neither the agreement, nor the corporate records are in evidence, and it is not shown, nor is it contended, that when Owyhee extended credit to Robbins it knew that Luman had ever been a stockholder, or intended to become one.

Reverting to the statute upon which the plaintiff relies: in order to see its proper application, it is well to have in mind its background and purpose. It is but a codification of a rule of equity to protect creditors from manipulations or connivance within a corporation so that when a creditor has extended credit to the corporation relying on the fact that a certain amount of stock is outstanding and paid for, the corporation cannot repurchase its own stock and return the money to its stockholders, which would thus have the effect of "jerking the rug out from under" the creditor.[4] This would be manifestly unfair and the rule to prevent it is salutary. But like all

2. See 18 Am.Jur.2d, Corporations, Section 246.
3. That a contract to be enforceable must be definite as to its terms, see Valcarce v. Bitters, 12 Utah 2d 61, 362 P.2d 427;

Hansen v. Snell, 11 Utah 2d 64, 354 P.2d 1070.
4. See Sanger v. Upton, 91 U.S. 56, 60, 23 L.Ed. 220; and cases cited in 47 A.L.R. 2d 758 at 761.

rules, it was intended to be applied under proper circumstances to accomplish its purpose and to prevent injustice or inequity. Its application should be confined to that purpose and it should not be extended unreasoningly into other circumstances where it was not intended to apply. The plaintiff's proposal would result in perpetrating an injustice by providing it with a fortuitous, unexpected and undeserved windfall, because of later discovered facts of which it knew nothing when it extended the credit, and in imposing an unjust penalty against Luman. The trial court correctly perceived the purpose and intent of this statute and wisely and justly ruled that it does not apply in these circumstances.

B. *It was a settlement of a bona fide controversy.*

■ The reason assigned by the trial court for its refusal to impose liability upon Luman: that the settlement between him and Robbins comes within the exception provided for in Sec. 16–2–16(a), U.C.A. 1953, which permits a corporation to purchase its own stock in a situation where it is done in good faith to settle a bona fide controversy, also provides a valid foundation for its action. When we reflect upon

the disharmony which existed between these parties, including their quickly discovered disenchantment with each other; that Robbins never did anything about issuing Luman any stock; never gave him the position as promised; and that the disputes between them were resolved by their agreement that Luman's money would be returned, there is a sufficient foundation for the view that the arrangement for repayment of Luman's money was a settlement arrived at "in good faith to settle a bona fide controversy" and thus under Sec. 16–2–16(a) exempt from the stock repurchase transactions made void under Sec. 16–2–15.

C. *The financial condition of Robbins, Inc. was not impaired.*

■ While it is not necessary to justify the further ground assigned by the trial court for its action, in view of the attack upon it, we observe that it also can be supported. Admittedly at first blush it seems somewhat unrealistic for the trial court to say that the payment of $1900 did not affect the financial structure of Robbins, Inc.[5] However, that finding should be understood in the light of the circumstances and the controversy which existed. The question was whether Robbins, Inc. could pay its

---

5. Sec. 16–2–16, U.C.A.1953, provides:
 "A corporation may purchase or redeem * * * its own capital stock in any of the following cases:
 * * * * *
 "(f) In any case where the use of the funds or property of a corporation for such purchase or redemption would not cause the impairment of that portion of its assets acquired as consideration for its shares or that portion which has been treated as payment for shares allotted as stock dividends."

·creditors, and whether it would have appeared so to the plaintiff. This transaction with Luman could not have had any substantial effect upon that situation. The evidence shows without dispute that Robbins, Inc. was insolvent at all times material here. Mr. Robbins himself so stated. That being so, even if this transaction had been a repurchase of stock, it would not have had the effect of rendering Robbins, Inc. insolvent and unable to pay its debts, because that condition already existed. Therefore, insofar as material to the issue between these parties, the trial court's finding in that regard was also correct.

 In addition to the traditional rules of review on appeal which provide support for the findings and judgment it is important to bear in mind here that in the lower court the burden was upon the plaintiff to establish its right to recover against the garnishee; and that the court having refused to so find, in order to prevail, the plaintiff must demonstrate that the evidence was so clear, credible and undisputed that all reasonable minds would so find. From what has been said above it should be obvious that we do not regard the evidence here as meeting that test. Furthermore, because the record brought here contains only part of the evidence presented in the lower court, we must assume that the evidence supports the findings.[6]

6. Bennett Leasing Company v. Ellison, 15 Utah 2d 72, 387 P.2d 246; Nagle v.

Affirmed. Costs to the garnishee defendant (respondent).

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (concurring in the result).

I concur in the result, but cannot subscribe wholly to the idea that the statute mentioned is a codification of anything. The main opinion says there was a bona fide controversy. With this I agree. This was such a loose arrangement that no one seems to know who paid what for what,— the money for stock never issued, or for stock *and* an officership in the corporation. I have doubts as to whether there was a contract of purchase, and what, if any, the consideration might have been. The reason given by the trial court may have been a cloud-nine-one, but the result seems to have been down to earth. We have okeyed such a result before.

CALLISTER, Justice (dissenting).

In my opinion there was a sale of stock to Luman and repurchase of the same by the corporation. Luman paid $4000 which was deposited to the corporate account. He thereupon, according to Mr. Robbins, became an officer and director of the corporation. The fact that no certificate of stock was issued to Luman did not prevent him

Club Fontainbleu, 17 Utah 2d 125, 405 P.2d 346.

188

from being a stockholder.[1] In fact, the evidence is to the effect that the corporation had never issued stock certificates. Both Robbins and Luman testified that the payment by the latter of $4000 was for the purchase of stock.

The lower court held that the repurchase of Luman's stock, if it were such a transaction, was permissible under the provisions of Sec. 16–2–16(a), U.C.A.1953. The majority opinion agrees, but both overlook the fact that this subsection is modified and controlled by subsection (f).[2] In other words, a corporation may purchase its stock to settle a bona fide controversy *only* if, in so doing, the capital is not impaired.

Both the lower court and the majority of this court take the position that the transaction did not affect the financial structure of the corporation because it was insolvent both before and after. This being so, the transaction was void. It seems to be the generally accepted view that an insolvent corporation cannot repurchase its stock.[3] It matters not whether Owyhee knew or did not know of the transactions between Robbins, Inc. and Luman.

Our statutes prohibiting purchase by a corporation of its own stock, except in certain specified instances, are not a codification of any rule of equity. They are

legislative enactments granting preference to creditors of a corporation because under most circumstances a shareholder's liability is limited to the amount of his investment. Because of this limited liability, the legislature has determined that of the two parties, the shareholder should sustain any loss to the extent of his investment rather than the creditor.

As a general rule, the purchase by an insolvent corporation of its own stock may be avoided in favor of subsequent creditors as well as in favor of those existing at the time of the transaction.[4]

For the foregoing reasons I would reverse the decision of the lower court.

---

1. Robey v. Hardy, 63 Utah 231, 224 P. 889 (1924); 13 Am.Jur., Corporations, §§ 172, 319.
2. See footnote 5 to main opinion.
3. 6A Fletcher, Cyc. Corps., § 2854, p. 401 and cases cited therein.
4. 47 A.L.R.2d 765. See also, Pace v. Pace Bros., 91 Utah 132, 59 P.2d 1 (1936).