In the Matter of **PREMIER SALES COMPANY, Inc., Debtor.**

**No. B–1337–66.**

United States District Court
D. Utah,
Central Division.

Dec. 18, 1967.

George E. Bridwell, Salt Lake City, Utah, for debtor.

Alvin I. Smith, and V. Rene Nelson, Salt Lake City, Utah, for objecting creditors.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

This matter is before me on a petition filed by certain creditors for review of an order of the Referee in Bankruptcy approving an amended plan of arrangement under Chapter XI of the Bankruptcy Act.[1]

Several grounds of objection to the order are urged.[2] It is necessary to discuss them only as they relate to a single

---

1. 11 U.S.C. §§ 701–799.

2. (1) No findings, conclusions, rulings or orders were entered with respect to the issue raised in regard to the payment to Marjorie Harvey of a promissory note secured by a mortgage, or with respect to whether the plan was in the best interest of the creditors and the corollary question whether the assets could be better administered in a Chapter X proceeding or an ordinary bankruptcy.

(2) The finding with respect to good faith is contrary to the facts and the law.

(3) The finding that the arrangement is feasible is contrary to the facts * * *

(4) No determination was made to the issue raised that the debtor has been guilty of an act which would be a bar to the discharge of the bankrupt in that it had made a fraudulent transfer within one year of the date of the petition in bankruptcy.

(5) The Findings of Fact and Conclusions of Law were premised on an order dismissing specifications which states that creditors' specifications or objections

question, whether it was clearly erroneous for the Referee to have confirmed an arrangement without determining or causing to be determined the validity of a certain mortgage covering the debtor's real property in favor of Marjorie Harvey, surviving widow of one of the principal stockholders of the debtor which had been given for the acquisition of a substantial block of its own capital stock.

Pursuant to the amended arrangement approved by the Referee, the debtor executed a note in favor of the trustee for a sum equal to 75% of the allowed general and unsecured claims, payable, without interest, $25,000 on or before July 1, 1967, $25,000 on or before Jan. 1, 1968 and the balance on or before Jan. 1, 1974. This note was secured by mortgage covering, in addition to personal property, the real estate belonging to the debtor, "subject to valid prior mortgages as of record in the office of the Salt Lake County Recorder". The Harvey mortgage was of record in that office.

The amended plan of arrangement was approved by a majority in number and amount of claims of the creditors and by two out of three members of the creditors' committee. There was substantial evidence to support the Referee's findings and conclusions that the amended plan was feasible and entitled to confirmation, aside from the question raised before him concerning the validity of the Harvey mortgage. On the latter question the Referee made no findings of fact or conclusions of law although the certificate on review took cognizance of it.[3]

From the facts presented before the Referee it is clear that a substantial question existed concerning validity of the Harvey mortgage.[4] On this, find-

were not sufficient in law despite the fact that such objections were not in fact demonstrated to be untrue and no legal reply was made in response thereto.

3. The Referee stated in his certificate: "That Debtor executed a note and mortgage prior to bankruptcy (March, 1964) running to a Marjory Harvey, widow of the deceased associate of Jack Bowman, Principal in Debtor in the face amount of $133,378.21; that the validity of the mortgage was informally questioned; that the Creditors Committee sought advice in reference thereto but a majority of the Committee elected to recommend no formal action in reference thereto other than to reserve the question in the event of liquidation; that there is no question that if the Harvey Mortgage is invalid that a larger equity would be available to creditors in the real property affected; that neither the Debtor, the Creditors Committee nor the Reviewing Creditors brought a proceeding before the undersigned or elsewhere to bring the *Mortgagee* before the Court so as to formally raise the validity of the mortgage and indeed such would be unnecessary if the plan as proposed and accepted is consummated; that it was felt by the undersigned that it would not be appropriate to make findings or determinations on a matter when all interested parties were not before the Court; that the creditors in the person of Lindsey Kesler, Trustee under the Plan, Note and Mortgages, would have a 'watch-dog' who by the

terms of such instruments could cause a liquidation of Debtor at any time * * * "

4. It appears from the brief furnished to the creditors committee by the lawyer investigating the matter for it, and the information was not questioned in the hearing on review before me, that the debtor was a closely held corporation; that in 1960 the sole stockholders were Fred J. Harvey (2,000 shares), Jack H. Bowman (2,000 shares), and Douglas C. Campbell (200 shares). Some time in 1960 the stockholders and the corporation entered into a stock purchase agreement whereby it was agreed that upon the death of any one of the stockholders, the corporation would purchase his stock in the corporation at a price to be arrived at by evaluation of all corporate assets as of the date of death of the stockholder. Subsequent to the date of the agreement, Fred J. Harvey died. In March, 1964, and pursuant to the stock purchase agreement, the corporation executed and delivered to Marjorie G. Harvey, his widow, its promissory note in the amount of $133,378.21 to be paid at the rate of approximately $1,000 per month. To secure the promissory note the corporation also gave to Mrs. Harvey a third mortgage on all of the corporation's real property. This is the mortgage in question.

Section 16–10–5, U.C.A. (Supp.1961) provides that a corporation shall have the right to purchase its own shares but

ings and conclusions were essential to a proper evaluation by the Referee of a plan of arrangement and to a consideration on review of a confirmation of any such plan.[5]

It is also plain that the objecting creditors did not waive consideration of the question, having pressed it before the Referee and by their petition for review here.[6] It is true that they did not seek formally to bring an independent action. Indeed, as will be seen hereinafter this was not necessary to test the matter. And before a plan was approved it was as much the responsibility of the Referee, and more within his powers, to have the question determined. It is also true that the mortgagee was not before the court

in the sense of notice, but the property of the bankrupt was; and on summary inquiry the law furnishes adequate means to the Referee by order to show cause and otherwise to give all requisite notices, and full opportunity to be heard.

The status of the mortgage seems highly relevant and material to a consideration of any plan for arrangement of the claims of unsecured creditors. If the mortgage were paid a principal stockholder, or his successor, would receive the full value of stock acquired by the corporation, whereas under the plan general creditors over a period of time would receive no more than 75% of their claims.[7] That the uncertain area thus effectively eliminated from consideration

---

such purchase "shall be made only to the extent of unreserved and unrestricted earned surplus available therefor, and, if the articles of incorporation so permit or with the affirmative vote of the holders of at least two-thirds of all shares entitled to vote thereon, to the extent of unreserved and unrestricted capital surplus available therefor." Section 16–10–5 concludes as follows: "No purchase of or payment for its own shares shall be made at a time when the corporation is insolvent or when such purchase or payment would make it insolvent." In the opinion of the legal advisor of the committee, Section 16–10–5 would apply to the present situation even though the stock purchase agreement was entered into prior to the effective date of the Business Corporation Act, inasmuch as Section 16–10–140 thereof provides that all corporations existing on the effective date of the act will be subject to all of the limitations, restrictions, liabilities and duties prescribed therein, except as otherwise provided. In any event, it is said, there was a somewhat similar prohibition under the old corporation act. It was the opinion of the advisor that the promissory note and mortgage securing it could be held void, provided that payments thereon have been or are being made from other than unrestricted capital surplus (since a two-third's vote of the stockholders could probably be obtained, the stricter earned surplus requirements probably would not apply) or if the corporation on the date of said note was or has since become insolvent in the sense that it is unable to pay its debts in the ordinary course of business.

The following authorities were cited and discussed: Annotation appearing at 47 A.L.R.2d pp. 758, 789. Hefferman v. Bennett & Armour, 110 Cal.App.2d 564, 243 P.2d 846 (1952); M. V. Moore & Co. v. Gilmour, 216 F. 99 (C.A.4th, 1914); Boggs v. Fleming, 66 F.2d 859 (C.A. 4th, 1933); Jackson v. Colagrossi et al., 50 Wash.2d 572, 313 P.2d 697 (1957) [But see: Georeseach, Inc. v. Morriss, 193 F.Supp. 163 (W.D.La.1961)]; In re Trimble Company, 339 F.2d 838 (C.A. 3rd, 1964); In re Fechheimer Fishel Company, 212 F. 357 (2d Cir. 1914); Mountain States Steel Foundries, Inc. v. C. I. R., 284 F.2d 737 (C.A.4, 1960); In re Mathews Construction Company, 120 F.Supp. 818 (D.C.Calif.1954); White v. Western Empire Life Insurance Company, 11 Utah 2d 227, 357 P.2d 483 (1960); Owyhee, Inc. v. Robbins Marco Polo, 17 Utah 2d 181, 407 P.2d 565 (1965); § 16–10–44(b) U.C.A. (Supp. 1961).

5. Cf. Featherstone v. Barash, 345 F.2d 246 (10th Cir. 1965); In Re Tracy, 194 F.Supp. 293 (N.D.Calif.1961).

6. An arrangement proceeding is not strictly an adversary proceeding but the court must exercise independent judgment no matter how large a majority of creditors accept a proposed arrangement. Technical Color & Chem. Wks. v. Two Guys from Massapequa, 327 F.2d 737 (2d Cir. 1963); In Re Village Men's Shops, Inc., 186 F.Supp. 125 (S.D. Indiana 1960).

7. Cf. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110, where in a corporate reorganization proceeding the Supreme Court

in connection with approval of the arrangement was substantial is further evidenced by the facts that all mortgage liens against the debtor's property totaled $296,933.84, the amount claimed under the Harvey mortgage was $117,515.-37, the appraised value of the property was $475,000 and the claims of unsecured creditors amounted to $370,761.-13.

The objecting creditors, and perhaps the Referee, accepted, and the former urge here, the theory that there is no practical way to resolve the question of the Harvey mortgage in a Chapter XI proceedings, and that the alternatives to the formulation and approval of a plan with an acceptance of the mortgage, whether valid or not, as a prior lien, were a Chapter X proceeding, bankruptcy or unconditional dismissal. Emphasis has been given by the objecting creditors to the principle that Chapter XI proceedings pertain exclusively to the unsecured claims of common creditors.[8] Counsel for the debtor here concedes that the Referee might have referred the question to the state court for "declaratory relief".

If the choice were between reference to a state court, no plan at all or Chapter X proceedings which appear otherwise poorly designed for the relatively simple problems of this case,[9] there might be excuse if not justification for the acceptance of a plan which could as a practical matter amount to the validation of an invalid mortgage against the interest of general creditors. But I do not believe that Chapter XI proceedings are so limited in their procedural resources as to render such a dilemma inescapable.

■■ The bankruptcy court upon the filing of the petition for an arrangement for the purposes of such an arrangement had exclusive jurisdiction of the debtor and his property wherever located.[10] Possession of the res draws to the bankruptcy court jurisdiction of all questions respecting title or liens, and it may, on notice to claimants determine the conflicting claims to the property in the debtor's possession.[11]

■ A lien holder not in the possession of the property is not an "adverse holder" and a bankruptcy court may de-

---

emphasized that stockholders' interest in property is subordinate to the rights of both secured and unsecured creditors and that any arrangement of the parties by which the subordinate rights and interests of stockholders are attempted to be secured at the expense of prior rights of either class of creditors comes within judicial denunciation. Since *Case*, Chapter XI was amended to eliminate the express requirement that an arrangement be "fair and equitable" (Act of July 7, 1952, 66 Stat. 420). Yet a similar principle has been read into the continuing "interest of creditors" concept under appropriate circumstances. See General Stores Corp. v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550.

8. 11 U.S.C. § 707(1). "(1) 'creditors' shall include the holders of all unsecured debts, demands, or claims of whatever character' against a debtor, whether or not provable as debts under section 103 of this title and whether liquidated or unliquidated, fixed or contingent * * *."

9. S.E.C. v. American Trailer Rentals, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510.

10. 11 U.S.C. § 711. "§ 711. Exclusive jurisdiction of debtor and property. Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located." See generally concerning summary jurisdiction in administration, Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391.

11. In re Gunder, 88 F.2d 284 (7th Cir. 1937), cert. denied sub nom.; 164 East 72d Street Corporation v. Gunder, 301 U.S. 701, 57 S.Ct. 931, 81 L.Ed. 1356; cf. Slenderella System of Berkeley v. Pacific T. & T. Co., 286 F.2d 488 (2d Cir. 1961) where debtor at time of petition was not in "possession" of property in question and summary jurisdiction to determine adverse claim in Chapter XI proceedings was denied.

termine questions as to the validity of such lien in summary proceedings.[12]

■ While generally a plan of arrangement formulated under the Bankruptcy Act is meant to affect only unsecured creditors of the debtor, liens are subject to administration of the bankruptcy court and it has power to determine their validity, status, and amount.[13] Here all of the real property covered by the Harvey mortgage is concededly in the possession of the debtor.[14]

Counsel for the objecting creditors have cited cases in claimed support of their contention that not only did the Referee err in approving an arangement without determination of the validity of the mortgage in question, but that the Referee had no power to make that determination and no alternative other than to dismiss the proceeding or to cause it to be brought as a Chapter X proceeding.[15] These cases do, indeed, illustrate the proposition that an arrangement proposed under Chapter XI cannot affect the rights of secured creditors or stockholders and must provide for unsecured creditors only.[16] But they fall far short of establishing that the court of bankruptcy cannot even identify or adjudicate which are validly secured or unsecured creditors, or creditors at all.[17] In *Camp Packing* clearly valid liens were proposed to be altered by the arrangement. In *Potts* there was "nothing in the record to controvert the fact that H. H. Potts is a secured creditor or to show that the security for his debt is insufficient". Despite vague language on which counsel have seized in an endeavor to make their point, the court simply held that the failure of the secured creditor H. H. Potts to accept the proposed arrangement was not fatal to it. In *Chaffee* the court sustained the dismissal of a petition for an arrangement because it could not be fairly, equitably and feasibly consummated without improperly affecting secured rights.

■ In the case at bar a determination of the validity of the mortgage in question would not "affect" any "secured" rights or those of stockholders; nor would a delay of the proceedings for such determination, as *Chaffee* with respect to the lien therein asserted, be pointless or merely an indirect way of affecting these rights. If the mortgage here is found by the Referee to be valid as against the creditors or the trustee, I see no reason why the Referee's confirmation of the plan would not be warranted under the findings made by him covering conditions then existing. If the mortgage is held to be invalid the mortgagee could no longer assert a secured creditor status, leaving a substantial additional value available to the unsecured creditors to be considered in relation to the approval or rejection of any plan.

---

12. Pasadena Investment Company v. Weaver, 376 F.2d 175 (9th Cir. 1967); In Re Ripp, 242 F.2d 849 (7th Cir. 1957); Chichester v. Polikowsky, 231 F. 2d 183 (9th Cir. 1955).

13. Pasadena Investment Company v. Weaver, supra; see also United States v. National Furniture Company, 348 F.2d 390 (2d Cir. 1965); In Re Canyon Pipe Line Co., 39 F.Supp. 233, 236, and cases cited therein.

14. Cf. In the Matter of Dennett, In Bankruptcy No. B–1153–67 (Unpublished) Dec. 4, 1967, where property of the Chapter XII debtor was adversely claimed by a third party title owner and a state receiver, who was in possession of the property in question and in which the bankrupt had no record title. See also Loyd v. Stewart & Nuss, Inc., 327 F.2d 642 (9th Cir. 1964).

15. In Re Camp Packing Co., 146 F.Supp. 935, and Chaffee County Fluorspar Corporation v. Athan, 169 F.2d 448 (10th Cir. 1948).

16. 9 Collier (14th Ed.) p. 155; S.E.C. v. American Trailer Rentals, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510, supra.

17. See for example 11 U.S.C. § 708: "A creditor shall be deemed to be 'affected' by an arrangement only if his interest shall be materially and adversely affected thereby. In the event of controversy, the court shall after hearing upon notice summarily determine whether any creditor is so affected".

In this event there would then be reopened the question of fairness to creditors of the plan now proposed, and related questions.[18]

Were the Referee to have no summary jurisdiction to make inquiry, a pattern would exist for the complete frustration of Chapter XI proceedings by the interposition of frivolous claims to liens. If we accept the thesis that summary jurisdiction does not exist such a claim yet could block Chapter XI proceedings if it affected property essential to a practical plan. Though the claim of invalidity here is substantial rather than frivolous, the right and duty of the Referee to make the determination seems equally clear, and even more necessary; an insubstantial claim of a lien might be disregarded in approving a plan but an unresolved claim of the substantial nature and amount here in question precludes in my opinion a considered judgment.[19]

Whether the mortgage in question is invalid, whether the arrangement should be approved in such event, whether prior to such determination in view of delay in making the adjudication, the arrangement should be rejected by reason of changed conditions; whether conditions have been so clarified by lapse of time as to confirm or negate the feasibility of a particular plan in any event, and whether any other action would be appropriate in view of developing circumstances, all are matters which in the first instance should be passed upon by the Referee after remand and on which I express no opinion.

Remanded to the Referee for proceedings not inconsistent with the views herein expressed.

18. It is a referee's duty, among other things, to consider whether a debtor has been guilty of any act or omission which would be a bar to a discharge in bankruptcy. It was concluded by the Referee here that the debtor had not. Yet if the Harvey mortgage were invalid with knowledge on the part of the debtor of its invalidity there could arise a question whether substantial payments made thereon by the debtor within a year of the filing of the petition amounted to an endeavor to hinder, delay or defraud creditors by diverting funds to a stockholder. 11 U.S.C. § 32(c) (4). The argument of the objecting creditors that this would necessarily follow is not meant to be confirmed by these comments. But the possible problem under some states of fact illustrates another reason why the bankruptcy court should be deemed to possess jurisdiction to make a determination of the validity of liens covering property in a debtor's possession. Cf. Inter-State National Bank of Kansas City v. Luther, 221 F.2d 382 (10th Cir. 1955), cert. granted 350 U.S. 810, 76 S.Ct. 77, 100 L.Ed. 726, cert. dismissed 350 U.S. 944, 76 S.Ct. 297, 100 L.Ed. 823. And reconsideration of the plan is not barred because of mootness arising out of distribution, if any, of a portion of the payments under the plan to creditors, since any sums already received would be on account, if the present plan is disapproved, and would be pursuant to the present plan if finally confirmed. Technical Color Chem. Wks. v. Two Guys from Massapequa, 327 F.2d 737 (9th Cir. 1964), supra.

19. Of course if a decision on the validity of the mortgage in question could be deemed so dependent upon unsettled principles of state law as to preclude a reasoned judgment on the part of the bankruptcy court, consideration could be given to the possibility of authorizing a plenary suit in the state court should the delay not frustrate the likelihood of any plan. See Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. Cf. In Re J. Rosen & Sons, 130 F.2d 81 (3d Cir. 1942).